554 So.2d 445 (1989)
GAINES, GAINES & GAINES, P.C. as successor in interest to Gaines, Gaines & Barnett, P.C.
v.
HARE, WYNN, NEWELL & NEWTON, et al.
Civ. 7135.
Court of Civil Appeals of Alabama.
September 28, 1989.
Rehearing Denied November 15, 1989.
George C. Douglas, Jr. and Ralph D. Gaines, Jr. of Gaines, Gaines & Gaines, Talladega, for appellant.
James J. Thompson, Jr. of Hare, Wynn, Newell & Newton, Birmingham, Joseph W. Hutchinson III, Butler, and Larry U. Sims and Joseph D. Steadman of Coale, Helmsing, Lyons, Sims & Leach, Mobile, for appellees.
PER CURIAM.
This is an appeal from an order awarding attorney's fees of $7,500 based on quantum meruit.
Following the vehicular accident death of Thomas Benton Barnett, a minor, in 1987, his father, Robert B. Barnett, Sr. (Mr. Barnett) had to decide what to do as father and next of kin.
*446 The collision involved a vehicle and driver of Floyd and Beasley Transfer Company (Floyd & Beasley) and the deaths or injury of four persons. Thomas Benton Barnett and Steven Joseph Rytlewski were killed; Teddy Alvis and Lee Henry McGrew were seriously injured in the car crash. Two law firms, a Mobile firm and Hare, Wynn, Newell and Newton (Hare, Wynn) of Birmingham, became involved in representing other parties in the case. Mr. Barnett had conversations with Mr. Rytlewski, the father of one of the victims in the wreck, who had employed Hare, Wynn. Mr. Rytlewski recommended Hare, Wynn to Mr. Barnett. After it was determined that there was negligence on the part of the driver for Floyd & Beasley which caused the collision, Robert B. Barnett, Jr., (Barnett, Jr.) at his father's request, attempted settlement negotiations with the insurer of Floyd & Beasley. Barnett, Jr., was at that time a partner in the law firm of Gaines, Gaines, and Barnett, P.C., of which Gaines, Gaines, and Gaines, P.C. (the Gaines firm), is the successor in interest.
Both Mr. Barnett and Barnett, Jr., testified that the only arrangement they discussed was for Barnett, Jr., to make contact with the insurance company and attempt to make settlement so as to avoid a lawsuit. Such arrangement for settlement was contemplated to be without any fee arrangement.
Mr. Barnett stated that if a lawsuit was necessary he had no intentions of engaging the Gaines firm but would use the Hare, Wynn firm.
On November 3, 1987, when it became apparent that a settlement could not be reached and that a law suit would be filed, Barnett, Jr., at Mr. Barnett's direction, contacted James J. Thompson, Jr., of Hare, Wynn to prosecute a wrongful death action against Floyd & Beasley. Barnett, Jr., arranged with Thompson for a 25% contingency fee split equally between the firms with the understanding that Barnett, Jr., would continue an active role working on the case with Hare, Wynn. However, approximately two months after writing the letter to Mr. Thompson, Barnett, Jr., decided to leave the Gaines firm, move to Atlanta, and no longer participate in the prosecution of the case. In discussing this career move with his family, he advised his father, Mr. Barnett, that the Gaines firm was under the impression they would still be involved in the case. Mr. Barnett expressed his dissatisfaction with that employment arrangement and stated that he never intended that the Gaines firm represent him.
By letter of February 12, 1988, to the Gaines firm, Mr. Barnett confirmed his earlier conversation discharging the firm. He also requested an invoice for any expenses incurred by the firm in the case up to the time of discharge. Mr. Barnett then negotiated and entered into a formal agreement with the Hare, Wynn firm to represent him in the lawsuit. The Gaines firm later responded (on April 8, 1988), acknowledging their discharge but asserting a right to one-half of a 25% contingent fee. On May 25, 1988, the Gaines firm filed a motion to enforce a fee agreement and establish an attorney's lien for 12.5% of any amount recovered. The trial court held a conference with the attorneys and ordered that consideration of the motion filed by the Gaines firm be deferred until resolution of the case.
After two days of trial the case was settled for $1,500,000 on November 29, 1988. The trial court then ordered the disputed 12.5% of the total recovery to remain on deposit with the clerk until the fee dispute was resolved. At the trial court's request, both parties to the fee dispute wrote briefs setting out their positions. The trial court later set a hearing and received ore tenus evidence. On January 9, 1989, the trial court entered an order finding that any contingent fee agreement between Mr. Barnett and the Gaines firm was terminated in January 1988 when the Gaines firm was discharged by Mr. Barnett. The trial court further found that any agreement between the Gaines firm and Hare, Wynn was conditioned on the active participation of the Gaines firm in the case, which was not fulfilled, and that discharge of the Gaines firm had the effect of relieving Hare, Wynn of any obligations *447 it had to share the contingent fee with the Gaines firm.
Finally, the trial court held that the Gaines firm was entitled to a fee recovery based on quantum meruit for the reasonable value of services it rendered. The trial court set the quantum meruit fee for the Gaines firm at $7,500, disallowing any enhancement and following the criteria set out by our supreme court in Peebles v. Miley, 439 So.2d 137 (Ala.1983). From that order, the Gaines firm appealed to the supreme court on the basis that the amount sought exceeded $10,000. The supreme court transferred the case to this court due to its lack of jurisdiction in that the judgment appealed from is less than $10,000. Ala.Code 1975, § 12-3-10 (1986 Repl.Vol.).
On appeal, the Gaines firm raises the issue of whether the trial court committed reversible error by awarding the Gaines firm an attorney's fee based on quantum meruit rather than enforcing an agreement to equally divide a contingent fee based on the amount of recovery. The Gaines firm separates that issue into subparts as follows: (1) whether the trial court should have enforced the fee division agreement between the Gaines firm and Hare, Wynn; (2) whether the trial court's holding that the fee division was conditioned on active participation by the Gaines firm was supported by the evidence; (3) whether the trial court misapplied the law to the facts; (4) whether the Gaines firm became entitled to one-half of the fee at the time it associated Hare, Wynn, or at least one-third of the fee for referring the case to Hare, Wynn; (5) whether the trial court's quantum meruit award was without evidentiary support and therefore palpably wrong and manifestly unjust; and (6) whether Hare, Wynn should be allowed to raise the discharge of the Gaines firm by the client as a defense to enforcement of the fee division agreement.
Before we address the particularities of the issue presented on this appeal, we feel compelled to first focus on what we believe to be the real thrust of the matter before us. That matter details itself into what effect Mr. Barnett's February 1988 discharge of the Gaines firm had on the original contingent fee arrangement between the Gaines firm and Hare, Wynn.
It is well recognized that the employment of an attorney by a client is revocable by the client with or without cause, and that such discharge ordinarily does not constitute a breach of contract even with a contract of employment which provides for the payment of a contingent fee. There are, of course, well recognized procedures where a discharged attorney may recover compensation for the services rendered to that client before the discharge. See 7A C.J.S. Courts § 220 and § 289 (1986).
It seems clear, under the circumstances of the case before us, that Mr. Barnett's discharge of the Gaines firm left him free to enter into a contract of employment with any attorney for the purpose of effecting the prosecution of his claim for the wrongful death of his son. It also seems clear that the discharge terminated the Gaines firm's participation in a contingent fee with any successor attorney or law firm whether previously involved in the case or not.
The dispositive issue is whether the trial court abused its discretion by awarding the Gaines firm an attorney's fee based on quantum meruit.
We first acknowledge the presumption of correctness of the trial court's findings when, as here, the evidence is presented ore tenus. This court will not disturb the trial court's findings unless they are plainly and palpably wrong or manifestly unjust. Hall v. Mazzone, 486 So.2d 408 (Ala.1986).
Our close review of the facts presented in this case, applying the appropriate presumption of correctness and well-established Alabama law on this subject, leads us to affirm the holding of the trial court that the Gaines firm is due an attorney's fee award based on quantum meruit. It is well established that part performance of a contract, prior to being discharged, entitles one to recover on quantum meruit for those services rendered. Our supreme court clearly explained this general holding as follows:

*448 "The rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated only for services rendered before such discharge. Hall v. Gunter, 157 Ala. 375, 47 So. 155 [ (1908) ]. This appears to be the prevailing rule where the contract, as here, called for a contingent fee. 6 C.J. p. 724, § 293." Owens v. Bolt, 218 Ala. 344, 348, 118 So. 590 (1928).
At this juncture, and because of the importance of fee arrangements to the members of the legal community, we choose to view more closely some of the subissues the Gaines firm raises in this appeal.
The Gaines firm contends that the trial court abused its discretion when it failed to enforce a fee division agreement between the Gaines firm and Hare, Wynn because the essential terms of the fee division agreement were not disputed by any credible evidence. We find this argument without merit.
There was testimony presented that the involvement of the Gaines firm in this case was due solely to the fact that the brother of the deceased was a partner in the Gaines firm. Mr. Barnett testified that he asked his son, Barnett, Jr., to do some preliminary work on the case, which he performed while a partner of the Gaines firm. Mr. Barnett further testified that it was not his intention to hire the Gaines firm to handle this case because he believed they did not ordinarily handle this type of case and also because he understood the Gaines firm actively represented Floyd & Beasley, and, therefore, this would be a conflict of interest. Additionally, Mr. Barnett testified that he later discharged the Gaines firm prior to the preparation, trial, and settlement of this case, and hired Hare, Wynn. Mr. Barnett explained to the trial court, and in the February 12, 1988, letter discharging the Gaines firm, that the services of the Gaines firm were not desired by him but that he would pay the Gaines firm reasonable expenses for services rendered to the point in the case where he discharged them.
The trial court made no finding regarding whether a valid fee division agreement ever existed between the Gaines firm and Hare, Wynn, but, rather, held that "any contingent fee agreement between Robert B. Barnett, Sr., and the Gaines firm was terminated by Mr. Barnett in January of 1988. This discharge came long before the contingency was fulfilled...."
Applying the rationale of Owens, supra, the trial court did not abuse its discretion in failing to enforce a fee agreement. In fact, to have allowed the enforcement of such fee agreement in the face of the discharge would have been error.
The Gaines firm next argues that the trial court's finding that any fee division agreement was conditioned on active participation by the Gaines firm was not supported by the evidence. The evidence presented testimony and letters clearly showing that Barnett, Jr., associated Hare, Wynn to assist in the prosecution of the wrongful death case. Barnett, Jr., clearly expressed to Hare, Wynn, in a letter dated November 3, 1987, his intention to maintain an active role and to work with Hare, Wynn on the case. Further, testimony before the trial court was that the active role was indeed maintained by way of preliminary work by Barnett, Jr., during the time he was a partner in the Gaines firm.
The Gaines firm presented no evidence of their continuing to maintain any activity on this case after Barnett, Jr., left the firm. However, testimony from Thompson revealed that the reason Hare, Wynn agreed to help Barnett, Jr., in this case, at a reduced rate, was because of a professional courtesy extended to him because the case involved the death of the brother of a fellow lawyer, and because Barnett, Jr., acting for the Gaines firm, would be sharing the work load. Certainly, the testimony from both Thompson and Barnett, Jr., coupled with the letter of November 3, 1987, is credible evidence supporting the trial court's finding that any fee division agreement was conditioned on active participation by the Gaines firm.
Further, the Gaines firm attempts to argue that it was entitled to one-half of the *449 fee at the time it associated Hare, Wynn, or no less than one-third of the fee when it referred the case to Hare, Wynn.
As discussed earlier, any agreement between the Gaines firm and Hare, Wynn, was conditioned on active participation by the Gaines firm. At best, the involvement of the Gaines firm was limited to the preliminary work performed by Barnett, Jr., prior to his leaving the Gaines firm. Additionally, when Mr. Barnett discharged the Gaines firm, active participation became an impossibility and limited the Gaines firm's recovery to services it had performed.
The argument the Gaines firm advances regarding a one-third referral fee fails in light of the Gaines firm's earlier admission that it "associated" Hare, Wynn. In the original pleading, the Gaines firm asserts, "On or about November 3, 1987 Robert B. Barnett, Jr., (Barnett, Jr.) associated James J. Thompson, Jr., and the firm of Hare, Wynn ... with the understanding that ... this firm would continue an active role in the case." Clearly, there was no case referral by the Gaines firm to Hare, Wynn.
The Gaines firm argues that the trial court's quantum meruit award was without evidentiary support. We find this argument without merit.
The trial court specified in its order the consideration of the criteria set out by our supreme court in Peebles v. Miley, 439 So.2d 137 (Ala.1983), for determining reasonable attorney fees. We find it unnecessary here to set forth the twelve criteria in Peebles, supra. We recognize, however, that the trial court utilized the proper criteria for its determination and that the determination of reasonable attorney fees lies within the discretion of the trial court. Van Shaack v. AmSouth Bank N.A., 530 So.2d 740 (Ala.1988), and Peebles, supra.
In the present case, the trial court had before it evidence concerning the approximate number of hours expended by the Gaines firm on this case and evidence that the work performed by the Gaines firm was at a stage prior to the actual filing of the lawsuit. Such evidence, when viewed with the work required to prepare the case for trial, begin trial, and ultimately settle, supports the trial court's finding that the work the Gaines firm invested in this case is insignificant compared to the substantial work of Hare, Wynn.
We have examined all other contentions of the Gaines firm on this matter. Because of the longstanding cases dealing with attorney fees and the application of quantum meruit recovery for services rendered, we pretermit any further consideration of the issues and arguments in this case.
Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and ROBERTSON, J., concur.
RUSSELL, J., concurs in result.