In re Nicholas D. CHERIOGOTIS, Debtor.

Nicholas D. CHERIOGOTIS, Plaintiff,

v.

Sylvia H. WHITE, Defendant.

Bankruptcy No. 93–03930–RRS–7. Adv. No. 94–00044.

United States Bankruptcy Court, M.D. Alabama.

Dec. 28, 1994.

Cameron A. Metcalf, Dothan, AL, for Cheriogotis.

Robert D. Drummond, Jr., Montgomery, AL, for White.

*OPINION ON MOTION TO AVOID LIEN*

RODNEY R. STEELE, Chief Judge.

In this case, the Bankruptcy Court has been called upon to determine questions relating to the discharge rights of the debtor.

## I

This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1334. Moreover, the Court finds that the matter before it is a "core matter" within the meaning of 28 U.S.C. § 157(b)(1) as exemplified in 28 U.S.C. § 157(b)(2)(K).

## II

Nicholas Cheriogotis killed Allbun L. Smith. Subsequently, Sylvia White, as personal representative of the Estate of Smith, hired attorney Sharon Yates to represent the estate in a wrongful death action. Ms. Yates associated the outside counsel of Samuel Cherry to prosecute this action. Cherry was granted broad latitude by White in his au-thority to act for the estate and a wrongful death action was filed against Cheriogotis.

On behalf of the estate, Cherry entered into a consent decree through Cheriogotis' attorney. In the consent decree, signed on March 19, 1991, Cheriogotis was held to be indebted to the estate in the amount of two million dollars. This judgment was specifically predicated on tort theories of negligence and negligent infliction of bodily harm.

Subsequently, Cherry contacted Joel Nomberg, an attorney not associated with Cherry, to assist in the collection for the estate of the $2 million judgment. In the course of this pursuit, Nomberg filed a civil action to set aside potentially fraudulent conveyances from Cheriogotis to third parties. White was not informed by Cherry of his decision to employ outside counsel to conduct collection activities, and had no prior knowledge of the filing of Nomberg's action. White's only notification of the pendency of the fraudulent conveyance action was derived from an article which subsequently appeared in a local newspaper, *The Dothan Eagle*[1], an article that according to the uncontroverted testimony of White she did not personally see. Her sister told her about the article.

Ms. White eventually became dissatisfied with the performance of Mr. Cherry as her attorney. On May 3, 1993 she delivered a handwritten note terminating the attorney—client relationship and orally demanded his staff to turn over her file. Several days later, White returned to retrieve a photocopy of all the information contained in Cherry's records. No specific action was taken to discharge Nomberg; however, according to the deposition of Nomberg, he was told by Cherry of the discharge of Cherry and ceased to actively pursue the fraudulent conveyance action thereafter.

On November 1, 1993 Cheriogotis filed a

---

1. Ferris Merkle, "Complaint Alleges Property Concealed," *The Dothan Eagle*, November 15, 1992. The article states, in part, "Ms. White's attorney, Joel M. Nomberg, filed a complaint against Nick Cheriogotis ... The complaint alleges the defendant 'fraudulently concealed and conveyed properties ...'"

Chapter 7 petition for relief with this Court.[2] Additionally, by his attorney, he filed a suggestion of bankruptcy in the pending state court fraudulent conveyance action.

Notice of both the bankruptcy filing and the suggestion of bankruptcy in state court were served upon Joel Nomberg, the counsel of record for the estate in the pending state court action. Upon receiving this notice, Nomberg filed a motion, on December 7, 1993, in the Houston County Circuit Court to withdraw as counsel for the estate. Service of this withdrawal was made on Samuel Adams and Tom Buntin, attorneys for Cheriogotis, and Samuel Cherry, but not upon Sylvia White, the Estate of Allbun Smith, Nicholas Cheriogotis, or Cameron Metcalf, Cheriogotis' counsel in the bankruptcy proceedings.

Following the routine practices of this Court in Chapter 7 cases, Kenneth Jones was appointed trustee, a § 341 meeting of creditors was held, Trustee filed a report of no distribution, and, on March 1, 1994, Debtor received his discharge.

Approximately three weeks later, Cheriogotis filed a Complaint to Avoid Judicial Lien held by White.[3] Service of this complaint was made on Kenneth Jones, Joel Nomberg, and on Ms. White herself. White, through her new attorney Robert Drummond, Jr., contested this motion and Debtor's motion for summary judgment on that motion.

Drummond also filed a "Motion for Relief from Judgment," attacking the entry of the order of discharge, at least as it applies to Mrs. White and the Estate. The summary judgment motion was subsequently denied, and the issue of dischargeability under § 523(a)(3), Title 11 is now submitted.

### III

The questions presented are:

1. Was the notice of Bankruptcy filing, served on Joel Nomberg, sufficient to bind Mrs. White and the Estate of Smith under Section 523(a)(3) of Title 11 so that the order of discharge will discharge the consent judgement of March 19, 1991?

2. If the notice was not sufficient, should the determination of dischargeability which would have been available to creditor under Title 11, U.S.C. Section 523(a)(6) be now entertained?

3. Should the judgment lien based on the consent judgment of March 19, 1991, be avoided under Title 11 U.S.C. Sec. 522(f)(1)(A), formerly 11 U.S.C. Sec. 522(f)(1)?

### IV

The Bankruptcy Code, § 523(a)(3) excepts from discharge "any debt neither listed nor scheduled under section 521(1) ..." This section also contains an exception to this general rule: where the creditor has actual knowledge sufficient to file, in a timely fashion, a proof of claim or request to determine dischargeability, the debt is discharged. *11 U.S.C. § 523(a)(3)(A), (B).*

 The knowledge or notice requirement of § 523(a)(3) does not, however, mandate personal knowledge of the creditor; the knowledge or notice of creditor's agent is held to be sufficient. A general principle of agency law is that non-ultra vires acts by an agent binds the principal. *See generally* § 8–2–1, *et seq., Code of Alabama (1975).* An attorney, as an agent for his client, is presumed to have the authority to bind the client. *Hawk v. Biggio,* 372 So.2d 303 (Ala. 1979); § 34–3–21, *Code of Alabama (1975)* ("An attorney has authority to bind his client ...") Therefore, proof of knowledge or notice of a creditor's attorney will usually prohibit the denial of discharge under (a)(3).

The rule binding a client through his attorney's actions is well established in Alabama law. From the turn of the century case of *Doe v. Abbott,* in which the state supreme

---

**2.** 11 U.S.C. § 101, et seq.

**3.** The consent judgment entered against Cheriogotis on March 19, 1991.

Court held that the action brought by an attorney in 1899, despite having not had any direct contact with the client since 1868, was presumptively authorized by the client. *Doe v. Abbott*, supra. In *Doe*, Justice Haralson, writing for the Court, stated,

> [t]he authority of an attorney at law ... who is regularly admitted and licensed, to appear for the party whom he professes to represent, is presumed until the contrary is shown ... an appearance in a suit by an attorney of the proper court, is presumed to be authorized. *Doe*, at 637–8

■ This rule has continued to be applied by Alabama courts. Within the past twenty years, the court has unequivocally stated, "[i]t is elementary that omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents." *Lawrence v. Gayle*, 294 Ala. 91, 312 So.2d 385 (1975); *see also Flowers v. McGill*, 442 So.2d 6 (Ala.1983) In *Oden v. Morgan County Board of Education*, the Court of Civil Appeals held that an attorney's actions or inactions may bind the client even where the client is allegedly not fully informed of those actions/inactions. *Oden v. Morgan Cty. Bd. of Ed.*, 617 So.2d 1020 (Ala.1991). "An attorney has the authority to bind his client, [only where] the attorney acts within the scope of his authority." *Flowers*, supra at 7.

■ These general principles of authority of an attorney apply in discussions of the notice and knowledge provisions of § 523(a)(3). According to a leading treatise on bankruptcy law:

> The sufficiency of notice to a creditor's attorney depends upon the nature and extent of the attorney's representation of his client. It is ordinarily considered sufficient if the attorney received knowledge of the case while representing the creditor in enforcing his claim against the debtor. Some courts, however, have held that notice to the attorney binds the creditor only

when such notice is acquired by the attorney's representation of the creditor in the bankruptcy case. *Collier on Bankruptcy*, 15th Ed. § 523.13 (citations omitted).

Therefore, where an attorney, acting within the scope of his responsibility receives notice or knowledge of a pending bankruptcy, the client may not successfully challenge discharge based on insufficiency of service. *In re Alton*, 837 F.2d 457 (11th Cir. (Fla.) 1988); *In re Price*, 871 F.2d 97 (9th Cir. (Cal.) 1989).

However, it is important to note that courts have consistently and uniformly held that where notice or knowledge of the bankruptcy filing is given to an attorney not representing a particular client, that notice or knowledge can not act to bind the individual. *See e.g. Maldonado v. Ramirez*, 757 F.2d 48 (3rd Cir. (V.I.) 1985). In *In re Meek*, notice sent to an attorney who had been dismissed by creditor approximately two years prior to the filing of the bankruptcy petition with the creditor's name inaccurately listed did not provide notice or knowledge to the client. *In re Meek*, 126 B.R. 1021 (Bankr.E.D.Ark.1991). The Bankruptcy Court in *Meek* held that there is no ongoing duty by an attorney to continue to provide notice to the client beyond the duration of the attorney—client relationship nor is there a responsibility for the client to remain informed of all information which the attorney receives which may have a tangential relationship to the client. *Meek*, supra.

■ In the instant proceeding it appears clear that service upon Joel Nomberg was inadequate. The Estate of Allbun Smith, through the personal representative Sylvia White had originally retained Samuel Cherry, but terminated that relationship on or about May 3, 1993. Nomberg was never retained by White but rather associated by Cherry, on his own initiative and without the knowledge or consent of White.[4] Any responsibility or authority of Nomberg to rep-

---

4. The existence of an attorney—client relationship gives rise to special duties and responsibilities. "A lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice." *Ala. Rules of Prof. Conduct* (1994), preamble. A lawyer serves as a legal advisor, but his role is not merely limited to the law.

resent anybody here flowed not from White to Nomberg but from Cherry to Nomberg. Nomberg's actions if they bound anybody could serve to bind not White, but rather Cherry. Furthermore, upon White's termination of Cherry any tie between White and Nomberg, however tenuous, was severed. Therefore, this Court holds service of notice of the filing of Cheriogotis' bankruptcy petition on Mr. Nomberg is not service on Mrs. White or the Estate of Smith and does not bind them to the order of discharge.

## V

■ Upon proper motion of a party the Court could rule that the insufficient notice prevents discharge of the debt owed to the Estate of Allbun L. Smith, 11 U.S.C. § 523(a)(3); however, in the instant proceeding, principles of equity require a less harsh application of the law. Despite this Court's ruling that service of process upon the Estate in care of Joel Nomberg was insufficient,[5] we conclude that we ought not to curtail Cheriogotis' availment of the Bankruptcy Code over an insufficient notice. The Court's equitable powers require a hearing on the ultimate and underlying question of the dischargeability of this debt. We put the creditor now in that position to question dischargeability which she would have had if she had had sufficient notice. The clock, in effect, is now reset.

■ A bankruptcy proceeding may be reopened to allow the inclusion of omitted creditors and to provide relief to a Debtor or for other cause. 11 U.S.C. § 350. In *In re Soult*, the Sixth Circuit allowed the debtor to reopen a Chapter 7 case where a creditor had been inadvertently omitted, there was no showing of a fraudulent scheme to defeat creditor's rights, and creditor's procedural and legal rights, including questions of dischargeability, upon reopening would be identical to the original filing assuming the creditor had not been omitted. *In re Soult*, 894 F.2d 815 (6th Cir. (Ohio) 1990). *See also In re Rosinski*, 759 F.2d 539 (6th Cir. (Mich) 1985).

The creditor will not be prejudiced by reopening the case to examine the dischargeability of this debt. Therefore the underlying bankruptcy case of Cheriogotis should be reopened for that limited purpose. But creditor must properly plead the question of dischargeability now remaining.

## VI

The Court therefore holds that the order discharging debtor entered on March 1, 1994 does not at this time apply to debts owed by Cheriogotis to the Estate of Allbun L. Smith. The judicial lien of the Estate of Smith remains valid pending any further actions in this case relating to dischargeability. Finally, because there will be no prejudice to creditor, the case will be reopened for fur-

There is a fiduciary duty with regards to the client's financial and other interests. A lawyer acts as an advocate, a negotiator, an intermediary, and an evaluator. These disparate duties have been codified in the code of professional conduct in each of the several states. *Eg. Ala. Rules of Prof. Conduct* (1994). There is clearly no such fiduciary relationship established between Nomberg and the creditor here.

Moreover, the attorney—client relationship is a very personal relationship. It must be based on some established and known arrangement between the counselor and the counseled. Attorneys are not fungible goods that may be traded one for another like pre-adolescent boys trading baseball cards of their sports heroes. A lawyer, absent consent of the client, has no right to assign the representation of a client to another member of the bar. *See Ala. Rules of Prof. Conduct* (1994), Rule 1.5(e)(2).

We need hardly add that an attorney's power to represent a client may be limited and a lawyer

is dischargeable by the client as a matter of right and without cause or justification. *Doggett v. Deauville Corp.*, 148 F.2d 881 (5th Cir. (Ala.) 1945); *Gaines, Gaines, & Gaines, P.C. v. Hare, Wynn, Newell, & Newton*, 554 So.2d 445 (Ala.Civ. App.1989).

So, where the presumption of authority of the attorney is challenged, as in this case, the burden is upon the party disputing such authority. *Hayes v. White*, 579 So.2d 1340 (Ala.Civ.App. 1990) (rev'd on other grounds) Here, we conclude that burden was met.

5. This Court does not sit in judgment on Joel Nomberg; however, we do strongly question the wisdom both of waiting several months after being informed of the discharge prior to filing a petition to withdraw as counsel of record and the failure to serve notification of such withdrawal upon either the putative client or upon counsel for opposition.

ther adjudication of the dischargeability of this debt if creditor or debtor seek such further adjudication.

### ORDER DENYING MOTION TO AVOID LIEN

By an opinion entered today, the Court has concluded that the Estate of Allbun L. Smith, did not receive sufficient notice to be bound by the discharge entered in this case on March 1, 1994. The Court has, however, further concluded that neither creditor nor debtor is prohibited from seeking a ruling on discharge of the debt to this creditor.

It is therefore ORDERED that the order discharging debtor is AMENDED to this limited extent: that all debts owed to the Estate of Allbun L. Smith are not affected by the terms and provisions of said discharge. It is further ORDERED that the underlying bankruptcy case, number 93–03930, is RE-OPENED to allow the interested parties to file any necessary pleadings to determine the dischargeability of the debt owed by debtor to the Estate of Allbun L. Smith. The period in which to file a complaint to deny dischargeability shall commence upon the date of entry of this order and closes effective February 1, 1995. Additionally, it is OR-DERED that Debtor's motion to avoid the judicial lien of the Estate of Smith is DE-NIED.