On May 22, 1998, Sloss Industries Corporation ("Sloss") filed a complaint against AVA Chemical Ventures, L.L.C. ("AVA"); Kimball Chase Technologies, Ltd.; Chemical Industry Services, Inc. ("CIS"); and Applied Power Concepts, Inc. ("APC"). Sloss's complaint related to a contract between Sloss and AVA. The various defendants to the action initiated by Sloss (hereinafter referred to as the "Sloss litigation") *Page 881 
answered the complaint. AVA and CIS counterclaimed against Sloss.
AVA had anticipated that its dispute with Sloss would require negotiations and that the parties to the contract might be forced to resort to litigation to resolve their dispute. In 1997, AVA entered into an agreement with David Harlow, an attorney licensed to practice law in Illinois, for Harlow to represent AVA on a contingency-fee basis in its negotiations with Sloss and in any action AVA might file against Sloss. The negotiations failed, and Sloss filed its complaint before AVA could initiate an action. The agreement between AVA and Harlow was later amended to provide that Harlow would also represent several of the other defendants named in Sloss's complaint (the parties represented by Harlow are hereinafter collectively referred to as the "clients.")
Other parties and claims were added in the litigation. The parties to the Sloss litigation made various filings and conducted discovery for approximately two years. On June 16, 2000, all of the parties to the Sloss litigation agreed to settle the claims involved in that action. On July 5, 2000, after the parties reached an agreement to settle but before that agreement was signed and executed, Harlow filed a motion to intervene in the Sloss litigation. In that motion, Harlow sought a lien pursuant to § 34-3-61, Ala. Code 1975, for his attorney fee.
On July 25, 2000, all of the parties to the Sloss litigation filed a collective motion to dismiss the action, stating in that motion that they had reached a settlement of the claims involved in the Sloss litigation. Harlow opposed the motion to dismiss, and Harlow and the parties submitted evidence in support of their positions.
On August 18, 2000, the trial court conducted a hearing on the pending motions. On September 28, 2000, the trial court entered a judgment in which it, among other things, granted Harlow's motion to intervene, granted the parties' motion to dismiss the Sloss litigation, made detailed findings of fact, and ordered that Harlow receive a lien in the amount of $10,606.93 for his attorney fee, pursuant to § 34-3-61, Ala. Code 1975. Harlow appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
Harlow worked for 15 years as general counsel for a chemical company; he is licensed to practice law in Illinois. Harlow testified that he drafted the agreement between him and the clients and that the clients' corporate representatives who signed that agreement were not attorneys. The agreement between Harlow and the clients is a contingency-fee agreement that provided that Harlow would receive a percentage of the amount the clients ultimately recovered in attempting to resolve the dispute through settlement or through any ensuing litigation. The percentage of the recovery Harlow was to receive depended on the manner of the recovery. Harlow stated at the August 18, 2000, hearing that a settlement was one manner of recovery that was encompassed by the attorney-fee agreement.
Harlow testified that the contingency-fee agreement provided that he would act as lead counsel in the litigation, but that the clients would retain local Alabama counsel because Harlow was not licensed to practice law in Alabama. The contingency-fee agreement provided that Harlow would review and approve all reasonable fees charged to the clients by the firm hired to be local counsel in the litigation.
The clients retained the law firm of Balch Bingham, L.L.P., as local Alabama counsel. The initial agreement between the clients and Balch 
Bingham *Page 882 
provided that Balch Bingham would be paid on an hourly basis; that the "major work" in the litigation would be performed by Harlow; and that Balch Bingham's role would be to, among other things, assist in hearings and depositions and review pleadings and motions for content and form.
It is undisputed that Balch Bingham's role in the litigation increased, that its attorneys performed a substantial amount of the work in the representation of the clients, and that the clients asked Balch 
Bingham, rather than Harlow, to represent them at the trial scheduled for July 2000. Harlow testified that he remained lead counsel and that he expected to direct the clients' case at the scheduled July 2000 trial. Harlow admitted that the clients had complained to him that they had expected him to perform the majority of the work in the litigation and that, because Balch Bingham had performed that work, the attorney fees generated during the course of the litigation were higher than the clients had anticipated.
Harlow testified that the contingency-fee agreement provided that the attorney-fee charges Balch Bingham submitted to the clients worked to reduce the overall recovery the clients hoped to obtain at the conclusion of the Sloss litigation. Harlow testified that because he was to be paid a percentage of the clients' total recovery, Balch Bingham's fees also reduced his fees "by a percentage."
At the August 18, 2000, hearing, Harlow disputed the reasonableness of some of the attorney-fee charges submitted by Balch Bingham in June and July 2000. Harlow challenged the amount of time Balch Bingham spent summarizing depositions and creating witness outlines in preparation for the scheduled July 2000 trial date. Harlow admitted that he had little experience preparing witness outlines and that a large number of the depositions Balch Bingham summarized were taken by him and were generally lengthy.
In its September 28, 2000, judgment, the trial court made detailed findings of fact. After reviewing the record on appeal, we conclude that those factual findings, quoted below, are fully supported by the record.
 "After preliminary negotiations, on March 31, 1997, Sloss and AVA entered into a contract for the commercial manufacture of a food-grade additive (the `product') pursuant to a process developed by William Farone of APC and patented by AVA.
 "After several failed attempts to manufacture the product, the relationship between the parties began to deteriorate. Sloss ultimately stopped attempting to manufacture the product.
 "In light of these events, AVA contacted Harlow and eventually retained him to represent it regarding the dispute with Sloss. Although there was a dispute between the parties, at the time Harlow was retained, Sloss had not yet filed its action. Harlow's representation was a contingency arrangement and was unlimited in scope, thus covering all stages of resolving this dispute, including, if necessary, trial of this matter by Harlow.
 "No evidence was presented that AVA was represented by counsel in its negotiation of the fee agreement with Harlow. The fee agreement between AVA and Harlow, drafted by Harlow, provides as follows:
 "`AVA hereby agrees to pay [Harlow] all necessary costs and expenses of the above-described representation, PLUS a fee for the above-described. The fee shall be a TOTAL of the following: *Page 883 
 "`1. A contingent fee of 25% of the "RECOVERY" (as such term is defined below) on behalf of the AVA. . . . In the event that formal mediation is commenced, suit is filed, or a trial is commenced, such 25% shall increase to 30%, 35% and 40%, respectively. Additional fees for appeal, if any, as to be agreed; PLUS
". . . .
 "`3. A fee of $200 per hour for time spent on collateral issues (unrelated to the March 31, 1997, Agreement to Manufacture) with Sloss, such as AVA's placement of the manufacture of [another product] with Sloss, or AVA's right to place such manufacture with other than Sloss.
 "`"RECOVERY" is defined to be the value received by AVA . . . from Sloss . . . as a result of Sloss's . . . non-performance under the March 31, 1997, Agreement or under any modification of such Agreement or under any other agreement to work directly or indirectly together on the manufacture of [the product], MINUS fees paid to Balch Bingham (and/or substitute law firm, if any) relating to this representation. Notwithstanding the foregoing, such fees shall not reduce RECOVERY, except to the extent such fees are reasonable and are approved by [Harlow] in writing prior to payment. Such approval shall not be unreasonably withheld by [Harlow]. [If "RECOVERY" is zero or negative, no contingent fee . . . shall be payable to, or from, [Harlow]. No representation has been made as to what amount, if any, to which [the clients] might be entitled in this case].'
 "Harlow admits that this fee agreement and the definition of `recovery' contemplate and provide for the possibility of a pre-trial settlement. Moreover, the fee agreement specifically provides that Harlow might receive nothing for this representation.
 "On May 21, 1998, the fee agreement was amended to provide that Harlow would be paid an hourly rate for services rendered relating to [a] collateral issue. . . . Harlow has been paid for these services.
 "Although Harlow claims that he had litigation experience before this case, he never has (1) conducted a voir dire questioning, (2) delivered an opening statement, (3) performed a direct examination of a witness in front of a jury or during a bench trial, (4) cross-examined a witness during a trial, (5) given a closing argument before a jury, (6) made a motion for [a judgment as a matter of law], or (7) submitted jury charges or argued jury charges before a court. Harlow never even attended a mediation before the first mediation in this case on November 10, 1999. Prior to signing the [contingency-fee agreement], Harlow's only experience related in any way to litigation involved three or four cases: two that did not go to trial and another case where, although it did go to a jury, Harlow did not participate actively in the trial. Moreover, as to these cases, at the August 18, 2000, hearing, Harlow exhibited difficulty in remembering the name of opposing counsel, the court, the jurisdiction, and, in some cases, the name of his client.
 "Harlow is licensed to practice [law] in Illinois, and he `believes' he is licensed [to practice law] in Indiana and Maryland. Harlow is not licensed [to practice law] in Alabama and, as a result, needed to associate Alabama attorneys and then be admitted pro hac vice. According to Harlow, a law firm in New York recommended Balch Bingham L.L.P. *Page 884 
 "On or about May 22, 1998, Sloss filed suit against the [clients]. Balch Bingham was hired shortly thereafter, but its role at that time was limited to that of `local counsel.' (`The Sextant Group, acting on AVA's behalf, has retained, and will continue to retain, the Alabama law firm of Balch Bingham (or such other substitute law firm satisfactory to [Harlow]) as local counsel to support [Harlow's] efforts as lead counsel throughout this representation.')[*] . . . Nevertheless, because of Harlow's inexperience, Balch Bingham was forced to undertake a substantial amount of the discovery and pretrial preparation in this action, and ultimately [was] named by its clients as trial counsel, leading to substantially larger legal fees on the part of Balch Bingham than the [clients] had contemplated.
 "In June 2000, the parties held their second mediation. Pursuant to the clients' instructions, Harlow was allowed to attend and participate in private meetings with the clients, but he was not authorized to participate in the public portion of the mediation.
 "On June 16, 2000, the parties, through duly authorized counsel, reached an agreement to settle the lawsuit. The terms of the agreement were recited in a letter signed by counsel for the parties. The settlement documents were completed and signed thereafter. Drafts and copies were sent to all of the [clients] and Harlow. . . . The [amount paid in settlement] is currently held in the Balch Bingham client trust account, pursuant to this Court's prior order, and the deposited funds remain in the registry of the Court.
 "Archibald Cox, Jr., the primary investor for [clients], was responsible for making the decision to settle the case for all of the [clients]. Cox's decision was based on his opinion that the settlement amount offered by the plaintiffs was a fair and adequate sum based on several factors, including an analysis of the relative merits of the parties' positions, the potential for recovery by the [clients], and the [clients'] potential for liability. The decision was not based on an intent to deprive Harlow [of] compensation for his services. In fact, Harlow has not advanced such an argument. Moreover, Harlow admitted that Balch Bingham [was] `competent Alabama counsel,' and the Court agrees.
 "The Court finds that the settlement was agreed to by all the parties, was not collusive, and was not entered into by the [clients] for the purpose of avoiding legal fees.
 "The Court finds no credible factual basis for Harlow's argument that he (Harlow) must approve any settlement. Neither prior to, nor during, the June 2000, mediation did Harlow inform his clients that he claimed such a reserved power. There is no basis in the [contingency-]fee agreement for such a power, and the [contingency-]fee agreement is unambiguous on this issue. Further, Harlow admitted that his `memory on the fee negotiation could be warped.'
 "After the settlement was agreed to [but before it was] signed by all of the parties [to the Sloss litigation], Harlow filed his motion to intervene in order to pursue his claimed attorney-fee lien on the grounds that the settlement was not `in [Harlow's] best interest, nor in the best interest of AVA, CIS, and the other clients.' Harlow's position regarding the settlement of this lawsuit is that his clients have an obligation to pay the fees and expenses incurred in perpetuity until a settlement is reached on terms acceptable to him. (`Q: But you are saying the clients had the obligation to pay all of these expenses until the case was *Page 885 
settled on terms that you approved or until the representation was over in some other way? A: Yeah. The contract says the fee agreement says they pay the fees until the representation is completed.') Again, there is no basis in the fee agreement for such an obligation on the part of the [clients].
 "According to Stephen D. Heninger, a prominent Alabama lawyer experienced in representing plaintiffs on a contingent-fee basis:
 "`Lawyers representing plaintiffs in Alabama on a contingent-fee basis almost always enter into a written fee agreement with their clients. The fee agreement, among other things, provides for a percentage of the recovery to be paid to the lawyer. In my experience, the decision to settle or not settle the case is made by the client. If the lawyer does not want the client to make this decision, the contract could address this issue. . . . It is common for a contingent-fee lawyer to receive little or nothing at the end of a case, even though great amounts of time may have been devoted to that case. Sometimes, the fact that a lawyer receives little or nothing is due to a decision by the client to settle for a smaller amount than the lawyer recommends, or a decision by the client to reject a settlement that the lawyer recommends, but who then receives nothing when the case is tried.'
"(Affidavit of Stephen D. Heninger.)
 "The fee agreement, drafted by Harlow, requires his approval of the fees of Balch Bingham L.L.P., for work in the Sloss litigation, which approval was not to be unreasonably withheld. The fee agreement expressly states that such fees reduce the `RECOVERY' (which is the basis for calculating his attorney fee in Harlow's contingency-fee agreement). Harlow's letters reflect approval of Balch Bingham fees in [a particular amount].[1]
 "Harlow has not approved Balch Bingham's fees for time spent in June 2000 that total $56,442.25 (leaving out all fees incurred after June 16, 2000, the date on which the parties agreed to settle the case). Harlow also has not approved the fees for Balch Bingham L.L.P. for work in the month of January 2000, which total $2,457.75. Harlow has not yet approved these fees, but offered no reason why these fees were not reasonable and why they were not approved.[**]
 "Harlow reduced the submitted attorney fees for the bill submitted by Balch Bingham in December 1999 (for work in November 1999) from $87,036 to $40,690.17.
 "All of these amounts submitted were reasonable and necessary in this legal community and all of the amounts should have been approved. In total, the fees that were approved by Harlow and which should have been approved were [a particular sum], and thus Harlow is entitled to $10,606.93 [as his attorney fee]. The [clients] are willing to pay Harlow the $10,606.93 due under the fee agreement.
 "As referenced above, after reaching an agreement to settle, [the parties to the Sloss litigation filed a joint motion to dismiss this lawsuit and to disburse the funds deposited with the Clerk of Court. . . . Harlow was provided the opportunity *Page 886 
to, and did in fact, litigate his claims (1) opposing the Motion to Dismiss with Prejudice and Disburse Funds, (b) for any of the settlement proceeds . . ., (c) for any attorney lien, (d) for any attorney fees, or (e) as to a right to intervene.
". . . .
 "Under the terms of the contract, Harlow is entitled to a fee of $10.606.93, which the [clients] are willing to and are hereby ordered to pay. Harlow is entitled to intervene for such a fee and for his claim to an attorney fee under his contract, but only to such extent. Harlow's request to prosecute the [clients'] counterclaim is denied.
 "[fn *] The fee agreement between Harlow and [AVA] was amended on June 13, 1998, to add CIS as a client and again on January 22, 1999, to add APC as a client. These amendments did not change the fee arrangement whereby Harlow agreed to accept a percentage of a settlement between the parties, minus fees paid to Balch Bingham.
 "[fn **] Although Harlow did complain about the fees charged by local counsel for summarizing depositions for use at trial, he admitted that he conducted many of the depositions in the early stages of the case which produced lengthy transcripts full of questions such as witnesses' grades in specific courses in college and other irrelevant matters."
The clients did not appeal the trial court's September 28, 2000, judgment. Therefore, the issue of the propriety of the trial court's granting Harlow's motion to intervene is not an issue in this appeal. In his brief on appeal, Harlow does not challenge the propriety of any of the trial court's factual findings. Rather, Harlow argues that the trial court incorrectly applied the law to the facts of this case.
Where a trial court hears ore tenus evidence, its findings of fact based on that evidence are presumed to be correct and will not be reversed unless they are clearly erroneous, manifestly unjust, without supporting evidence, or against the great weight of the evidence. Odomv. Hull, 658 So.2d 442 (Ala. 1995); Jasper City Council v. Woods,647 So.2d 723 (Ala. 1994). However, where the issue involved concerns the application of law to the facts, we review the issue de novo, and the ore tenus rule is not applicable. Allstate Ins. Co. v. Skelton, 675 So.2d 377
(Ala. 1996).
Harlow argues that § 34-3-61, Ala. Code 1975, the attorney's lien statute, requires that he must agree to any settlement entered into by the parties. Harlow argues that because he did not agree to the amount of the settlement, the clients should be required, pursuant to § 34-3-61, to litigate their claims before a jury so that his attorney fee could be calculated from the amount a jury would award.
Section 34-3-61, Ala. Code 1975, provides in part:
 "(a) Attorneys-at-law shall have a lien on all papers and money of their clients in their possession for services rendered to them, in reference thereto, and may retain such papers until said claims are satisfied, and may apply such money to the satisfaction of said claims.
 "(b) Upon actions and judgments for money, they shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said action or judgment, until the lien or claim of the attorney for his fees is fully satisfied; and attorneys-at-law shall have the same right and power over action or judgment to enforce their liens as their clients had or may have for the amount due thereon to them." *Page 887 
The purpose of § 34-3-61 is "to protect the attorney from loss of his investment in time, effort, and learning, and the loss of funds used in serving the interest of the client." Triplett v. Elliott, 590 So.2d 908,910 (Ala. 1991).
Pursuant to § 34-3-61, Ala. Code 1975, and its predecessors, an attorney may establish his right to an attorney-fee lien either through contract or on the theory of quantum meruit. Carnes v. Shores,55 Ala. App. 608, 318 So.2d 305 (Ala.Civ.App. 1975). See also Triplettv. Elliott, supra; Gaines, Gaines Gaines, P.C. v. Hare, Wynn, Newell Newton, 554 So.2d 445 (Ala.Civ.App. 1989). Harlow has claimed an attorney-fee lien pursuant to his contract with the clients; therefore, he has not argued the theory of quantum meruit before the trial court or before this court. An express contract between the parties generally precludes the existence of an implied agreement relative to the same subject matter. Betts v. McDonald's Corp., 567 So.2d 1252 (Ala. 1990). Therefore, this court must determine whether Harlow, as an intervenor, is entitled, pursuant to his contingency-fee contract with the clients, to prosecute the action before a jury and obtain a verdict and judgment.
Under certain circumstances, our courts have allowed an attorney to prosecute a case to judgment in order to ascertain the amount of the fee due to the attorney. See Alabama Produce Co. v. Smith, 227 Ala. 330,150 So. 148 (1933); Owens v. Bolt, 218 Ala. 344, 118 So. 590 (1928);Fuller v. Lanett Bleaching Co., 186 Ala. 117, 65 So. 61 (1914); Carnesv. Shores, supra. However, as the trial court noted in its judgment, many of these cases are distinguishable from the facts of this case either because they do not involve a contract setting forth the parties' agreement regarding the fees to be paid to the attorney, or because they involve fact situations in which the client settled the case in an intentional or fraudulent attempt to avoid paying his or her attorney.
In Gulf States Steel Co. v. Justice, 204 Ala. 577, 87 So. 211 (1920), our supreme court quoted the following with approval:
 "`While honest settlements between the parties to a litigation, made without any intention of taking advantage of their attorneys, are commendable and to be encouraged, collusive and fraudulent settlements, made for the purpose of defrauding the attorneys, are, of course, reprehensible. If such are attempted, the court may interfere to protect the attorney. . . . The proper course is for the attorney to proceed with the suit, notwithstanding the fraudulent settlement, for the purpose of enforcing his claims.'"
204 Ala. at 579, 87 So. at 213 (citations omitted). In Gulf States SteelCo. v. Justice, the attorney asserted in his motion to intervene that he had an attorney-fee agreement with the client for representing the client in a wrongful-death action, but that the client, in secret, settled the action with the intention of defrauding the attorney and preventing him from obtaining his attorney fee. The court held, among other things, that the attorney of record was entitled to intervene and to prosecute the action. See also Alabama Produce Co. v. Smith, 227 Ala. 330, 150 So. 148
(1933) (a party's bad faith was not allowed to destroy an attorney lien created pursuant to the predecessor to § 34-3-61, Ala. Code 1975);Fuller v. Lanett Bleaching Co., supra (parties to a civil action may not settle the action in a manner that defeats the right of the attorney for one of the parties to his fee).
In Carnes v. Shores, supra, Shores hired Carnes to represent her in enforcing the terms of a final judgment of divorce that awarded her alimony. After the *Page 888 
completion of discovery and after the action seeking alimony had been scheduled for trial, Shores informed Carnes that she wished to withdraw her petition seeking the enforcement of the alimony provision of the divorce judgment. After Shores abandoned her action, Carnes sought to continue to prosecute the action so that his attorney fee might be ascertained. This court reversed the trial court's denial of the attorney's petition to intervene and held, among other things, that Carnes was entitled to continue to prosecute the abandoned action in order to protect his attorney-fee lien and provide a basis for the calculation of that fee.
However, in this case, the clients have not abandoned the litigation and have not ended the litigation without making any provision for the payment of Harlow's fees. Rather, the clients settled the Sloss litigation and sought a judgment based on that settlement agreement. In this case, the contingency-fee contract provides the method for calculating Harlow's attorney fee. It is undisputed that the clients were willing to pay Harlow the attorney fee due under their interpretation of the contingency-fee agreement.
Another case cited by Harlow is also distinguishable from the facts of this case. Owens v. Bolt, 218 Ala. 344, 118 So. 590 (1928), involved a dispute over real property in which Bolt and Roberts (the "clients") sought a sale by division of property in which they allegedly shared an interest with Owens. The attorney-fee agreement between the clients and their attorney provided that the attorney would take necessary steps to recover the clients' interests in the real property, convert that interest to cash, and receive 40% of the amount realized as his attorney fee. Thus, the attorney-fee agreement at issue in Owens v. Bolt did not contemplate a settlement by the parties. The clients later sold their interest in the real property to Owens's husband, but the clients failed to pay the attorney for his services. The attorney sought an attorney-fee lien pursuant to the section that preceded § 34-3-61(3), Ala. Code 1975; one section of that predecessor provided an attorney a lien on real property involved in litigation in which the attorney represented a party. The court held that the attorney could intervene, but that he could not force the sale of property against owners who did not want the sale. Rather, the court held, the clients could not defeat the attorney-fee lien to which the attorney was entitled and the attorney could prosecute the action to judgment "to bring into being the subject-matter to which the lien attaches." Owens v. Bolt, 218 Ala. at 347, 118 So. at 593.
Harlow also relies on Denson v. Alabama Fuel Co., 198 Ala. 383,73 So. 525 (1916) ("Denson I"), and Alabama Fuel Iron Co. v. Denson,208 Ala. 337, 94 So. 311 (1922) ("Denson II"). Those two appeals involve the same parties and the same dispute over an attorney-fee lien in a wrongful-death action against the employer of the intestate. The attorney and the client, the intestate's father and administrator of the estate, entered into a written fee agreement that provided for a contingent attorney fee based on the recovery obtained either by settlement or by a judgment after a trial. The client settled the case, and the attorney presented evidence that the client and the defendant had settled with the intention of depriving him of his attorney fee. Denson I. The Supreme Court of Alabama held that the attorney could intervene and continue the case so that his attorney fee could be ascertained. Denson I. The attorney obtained a judgment against the defendant employer, who then appealed. Our supreme court, among other things, reiterated that the attorney's *Page 889 
lien statute allowed the attorney to intervene and continue the action.Denson II.
We conclude that on its facts, this present case is distinguishable from Owens v. Bolt, supra, because Owens v. Bolt involved a lien on real property, rather than a lien on a money judgment. Also, the attorney-fee agreement in that case did not provide for the compensation of the attorney in the event the parties settled their dispute. We also agree with the conclusion of the trial court, stated in its judgment, in which it determined that on its facts this present case is distinguishable from the Denson cases. Although there was a written attorney-fee agreement at issue in the Denson cases, the Denson cases involved a settlement through which the parties intentionally attempted to avoid paying the plaintiff's attorney a fee.
In this case, Harlow entered into a contingency-fee agreement with the clients. Harlow admits that the contingency-fee agreement provides for the possibility of a pretrial settlement between the parties to the litigation. The terms of the contingency-fee agreement provided that Harlow was to receive a percentage of the recovery, as reduced by the amount of the attorney fees paid to Balch Bingham. The amount of the fee Harlow was to receive depended on the stage of the litigation. Sloss had filed its complaint and litigation had begun at the time the parties settled their claims; therefore, the trial court determined that, pursuant to the terms of the contingency-fee agreement, Harlow was entitled to a fee of 35% of the recovery after the attorney fees paid to Balch Bingham had been deducted.
Harlow argues that he did not consent to his clients' settling the case, and that the Denson cases, supra, are authority for allowing the action to be prosecuted to a judgment after a trial in order that his attorney fee can be determined. The contingency-fee agreement between Harlow and the clients provides no support for Harlow's argument that the clients were required to have Harlow's permission in order to enter into a valid settlement.
Also, as discussed previously, the facts of this present case are distinguishable from those of the Denson cases, most significantly because in those cases, the client intentionally or fraudulently sought to avoid paying his attorney. This distinction also differentiates the facts of this case from the facts of many of those cases in which an attorney was allowed to continue to prosecute an action to a judgment after a trial. See Alabama Produce Co. v. Smith, supra; Owens v. Bolt, supra; Denson II; Gulf States Steel Co. v. Justice, supra; Denson I. Harlow has at no time alleged that his clients entered into the settlement in an effort to avoid paying him an attorney fee, and the record would not support such an allegation.
We conclude that our caselaw provides that where the written attorney-fee agreement contemplates compensation for the attorney in the event of a settlement of the litigation involving his clients, the terms of that attorney-fee agreement control to determine the amount of the attorney's lien available under § 34-3-61, Ala. Code 1975. However, where a client settles his litigation in a manner that intentionally, wantonly, or fraudulently deprives his attorney of a fee, the courts will not allow the party to destroy the attorney's right to a lien for his fee. Alabama Produce Co. v. Smith, supra; Gulf States Steel Co. v.Justice, supra; Denson II, supra; Denson I, supra.
Harlow correctly argues that § 34-3-61, Ala. Code 1975, applies to provide him an attorney-fee lien. However, he is incorrect in his interpretation that, under the *Page 890 
caselaw of this state, the action should continue to be prosecuted so that his attorney fee might be ascertained. As the trial court found in its judgment, the contingency-fee contract between Harlow and the clients unambiguously sets forth the manner of calculating Harlow's attorney fee. There has been no allegation, and no evidence, that the clients intentionally, wantonly, or fraudulently attempted to deprive Harlow of an attorney fee pursuant to the contingency-fee agreement, or that they simply abandoned the litigation without making any provision for paying Harlow's attorney fee. Therefore, we conclude that the trial court correctly determined that Harlow should not be allowed to continue to prosecute the clients' action to a judgment after a trial. Further support for this result is found in Rule 1.2, Ala. R. Prof. Conduct. That rule provides in part that "[a] lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter." Rule 1.2(a), Ala. R. Prof. Conduct. We also conclude that the trial court properly calculated the amount of Harlow's attorney fee pursuant to the contingency-fee agreement between Harlow and the clients.
Throughout the portion of this litigation involving Harlow's intervention and pursuit of an attorney-fee lien, Harlow has not sought to personally prosecute the action to a judgment after a jury trial. In the trial court, rather than seek to continue to prosecute the action himself, Harlow sought to require the clients to pay Balch Bingham to prosecute the continuation of litigation so that his attorney fee could be determined.
The cases on which Harlow relies in this appeal involve an attorney seeking to intervene in the action in order to prosecute the action to judgment. See Alabama Produce Co. v. Smith, supra; Owens v. Bolt, supra;Denson II, supra; Gulf States Steel Co. v. Justice, supra; Denson I, supra; Fuller v. Lanett Bleaching Co., supra; Carnes v. Shores, supra.See also Triplett v. Elliott, supra; Ex parte Counts, 683 So.2d 968
(Ala. 1996). This court has found no Alabama caselaw that discusses the extent of the financial obligation a client who has settled his litigation must bear in continuing to support the litigation after the attorney has intervened to prosecute the case to judgment so that his attorney fee may be determined. A factor a party often considers in determining whether to enter into a settlement is the cost associated with continuing to maintain or defend the litigation; one of those costs is the continued burden of paying attorney fees. Harlow has offered no authority for his argument that the clients should be required to pay the costs and legal fees incurred in the scheduled three-week trial in order that his attorney fee can be determined; this court has found no authority that mandates such a result.
The trial court correctly applied § 34-3-61 and Alabama caselaw in determining that, pursuant to the contingency-fee agreement, Harlow was entitled to a judgment in the amount of $10,606.93, representing the amount of the attorney fee to which he was entitled under the contingency-fee agreement. The trial court correctly entered a judgment in favor of Harlow in that amount. We affirm the trial court's judgment.
AFFIRMED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Murdock, J., concurs in the result.
[1] The terms of the settlement agreement between the parties to the action initiated by Sloss are confidential. Therefore, this court will omit from this opinion the amount for which the parties settled, the total amount of attorney fees charged by Balch Bingham, and the method for calculating Harlow's contingency fee.
The trial court's calculation of Harlow's attorney fee is mathematically correct. On appeal, Harlow challenges the trial court's use of the settlement amount as the basis for calculating his attorney fee; he does not challenge the mathematical accuracy of the trial court's calculation, assuming that using the settlement amount as the basis for that calculation is correct. *Page 891