MOORE, Chief Justice
(concurring in part and dissenting in part).
I concur in the Court s affirming the trial court’s judgment insofar as it orders Durward Jackson to pay $80,000 in legal fees owed to Alexander, Corder, Plunk, Baker & Shelly, P.C. (“the firm”), for services rendered by the firm. I must dissent, however, from its affirming the trial court’s award of an additional $100,000 pursuant to the fee agreement between Jackson and the firm.
Jackson contracted with the firm to represent him in litigation against the Rogers Group, which wanted to locate a rock quarry on land adjacent to property on which Jackson wanted to build an upscale residential subdivision with accompanying amenities such as a golf course and a restaurant. The goal of the litigation, filed on Jackson’s behalf against the Rogers Group, was to stop the Rogers Group from locating the rock quarry on the adjacent land, because of the effect it would have on Jackson’s housing-development project.
*816 Jackson met with attorneys from the firm for the first time on June 22, 1998; from that meeting came an agreement concerning representation. One of the firm’s attorneys sent Jackson a letter the next day detailing the terms of the fee arrangement for the firm’s representation of Jackson. The letter fee agreement provided that the fee would be as follows:
“(1) $30,000 payable at this time [June 23,1998];
“(2) If you wish for us to continue our efforts in this litigation on and after October 1, 1998, $50,000 due October 1,1998;
“(3) If you wish for us to continue our efforts in the litigation on and after February 1, 1999, $30,000 due February 1,1999;
“(4) $100,000 due upon and if we are successful in the litigation at the trial court level or if the Rogers Group ceases [its] efforts for any reason after February 1, 1999.”
(Emphasis added.)
Jackson made the first payment of $30,000. On September 8, 1999, the company Jackson formed to finance and develop the subdivision filed for bankruptcy. On September 16, 1999, the firm officially terminated its representation of Jackson and billed him for $80,000 in unpaid fees due pursuant to the fee agreement. Jackson refused to pay those fees, claiming that there was no evidence indicating that the firm represented him and his company on or after October 1,1998.
The firm sued Jackson on November 8, 1999, seeking $80,000 in unpaid fees, which it says were due to be paid on October 1, 1998, and February 1, 1999. In early 2001, the Rogers Group sold the property on which it was proposing to locate the rock quarry, at which point it became clear that no quarry was going to be established on the property adjacent to Jackson’s property. The firm then amended its complaint to seek the $100,000 fee that had been contingent on the Rogers Group’s ceasing its efforts to locate the rock quarry on the property adjacent to Jackson’s property. After a bench trial, the trial court entered a judgment in favor of the firm and awarded the firm the entire $180,000 it had requested.
I agree that Jackson assented to the terms of the fee agreement and that the firm represented Jackson on this matter from June 23, 1998, through at least February 1, 1999, which entitled the firm to $80,000 under the fee agreement, the total of which was contingent on continued representation through the latter date. However, I must disagree with the Court’s decision to allow the award of the additional $100,000 to stand.
The trial court concluded that Jackson owed the $100,000 because one of the contingencies that triggered Jackson’s obligation to pay the $100,000, i.e., the Rogers Group’s cessation of plans to locate a rock quarry on the property, occurred in 2001. The firm was awarded this $100,000 despite the fact that it ceased representing Jackson in September 1999 and that it, in fact, sued Jackson in November 1999 for fees it said he owed the firm.
The fee arrangement between Jackson and the firm was a contingent-fee agreement because the passage of time and the occurrence of certain events triggered Jackson’s obligation to pay under the fee agreement. See, e.g., Rule 1.5(c), Ala. R. Prof. Conduct (stating that a contingent fee is a fee “contingent on the outcome of the matter for which the service is rendered .... ”). The $50,000 fee due on October 1, 1998, and the $30,000 fee due on February 1, 1999, were contingent on the firm’s representing Jackson after those dates. The payment of the $100,000 fee *817 was contingent upon either success in litigation at the trial level or upon the Rogers Group’s “ceas[ing] [its] efforts” to establish the rock quarry “for any reason after February 1, 1999.” The case never went to trial, but the Rogers Group did cease its efforts to establish the quarry. Thus, on the face of the contract, it appears that Jackson owed the firm the $100,000.
However, the face of the contract does not control in this case because the firm ceased representing Jackson more than a year before the contingency necessary to trigger the payment of the $100,000 fee occurred.
“It is well established in Alabama that upon an attorney’s discharge, the prior part performance of a contract entitles the attorney to recover for those services rendered. As the Court of Appeals pointed out in Gaines[, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So.2d 445 (Ala.Civ.App.1989)]:
“4 “The rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated only for services rendered before such discharge. Hall v. Gunter, 157 Ala. 375, 47 So. 155 [(1908)]. This appears to be the prevailing rule where the contract, as here, called for a contingent fee. 6 C.J. p. 724 § 293.” Owens v. Bolt, 218 Ala. 344, 348, 118 So. 590 (1928).’
“554 So.2d at 448.”
Triplett v. Elliott, 590 So.2d 908, 910 (Ala.1991) (emphasis added).
In this case, it was not the client who terminated the representation, but rather the firm. Indeed, the firm sued its former client before the occurrence of the very event it claims entitles it to the additional $100,000. If, according to Triplett and other cases, an attorney, when the client terminates the relationship, can receive a fee only for services rendered before termination of the representation and not the amount agreed to in the contingency-fee agreement, then certainly when the law firm terminates the relationship before cessation of the underlying dispute, the law firm would be entitled only to fees for services rendered before that termination. When the firm terminated its representation of Jackson in September 1999, it terminated the agreement between it and Jackson as well. Without the agreement, no basis exists for holding Jackson responsible for the $100,000 fee that supposedly came due in early 2001 after the Rogers Group sold its land. The trial court’s ruling in this case allowed the firm to benefit from an event that occurred after the fee agreement ceased to exist.
Determining how much an attorney is owed in a contingency-fee arrangement occurs often when the client discontinues the attorney-client relationship before the case goes to trial. In those situations, the attorney is entitled to a reasonable fee for services rendered, but is not entitled to the contracted-for fee because “the contingent fee agreement was terminated, not breached.” Trenti, Saxhaug, Berger, Roche, Stephenson, Richards & Aluni, Ltd. v. Nartnik, 439 N.W.2d 418, 421 (Minn.Ct.App.1989); accord, Gaines, Gaines, & Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So.2d 445, 447 (Ala.Civ.App.1989) (“It is well recognized that the employment of an attorney by a client is revocable by the client with or without cause, and that such discharge ordinarily does not constitute a breach of contract even with a contract of employment which provides for the payment of a contingent fee.”).
The only difference between the ordinary attorney-client contingency-fee dispute and this case is that the contingency in this case was due not only if the outcome at trial was successful, but also if a certain event outside of litigation occurred, *818 i.e., the cessation of plans to locate the rock quarry on property adjacent to Jackson’s. The occurrence of this event after the firm, had terminated its representation in no way obligates Jackson to pay the $100,000, just as termination by the firm of its representation of Jackson before a successful outcome at trial would not obligate Jackson.
In short, the firm was entitled to its fees under the contract up to the time it ceased representing Jackson, but not after that time. To demonstrate that it is entitled to any fee after February 1, 1999, the firm would have had to present evidence that it worked for Jackson beyond that date. In other words, the contingencies entitling the firm to fees under the contract assume the firm’s continued representation of Jackson. To hold otherwise makes Jackson responsible for a fee after contractual ties had been severed, after Jackson’s development venture had failed, and after the firm had sued Jackson for services rendered under the fee agreement. It was the firm — not Jackson — who declared the contract at an end when it sued Jackson. To allow recovery by the firm under the fee agreement is not appropriate; it defies common sense. Therefore, I dissent.