Rel: November 8, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0142

_____

### John A. Daugherty

### v.

### Molly Chew Baker

**Appeal from Jefferson Circuit Court**
**(CV-22-900749)**

MENDHEIM, Justice.

Attorney John A. Daugherty appeals pro se from the Jefferson Circuit Court's judgment dismissing of his complaint asserting a breach-

of-contract claim against his former client, Molly Chew Baker ("Molly"). We affirm.

I. Facts

Daugherty and Molly had been friends for some time when Molly came to Daugherty and told him that her former husband, Christopher Allan Baker ("Christopher"), had not been complying with an "Agreement of the Parties" that had been adopted as part of a consent divorce judgment that had been made final on August 19, 2014, in the Domestic Relations Division of the Jefferson Circuit Court, case number DR-2014-900024 ("the domestic-relations case"). Specifically, Molly told Daugherty that Christopher had not been paying the agreed-upon amount of monthly alimony, which had resulted in Molly's struggling to meet daily financial needs. Molly informed Daugherty that her current attorney was having a difficult time serving Christopher with a petition for a rule nisi that sought to hold Christopher in contempt for his failure to abide by the divorce judgment. Molly believed that the domestic-relations court might dismiss the petition for a rule nisi based on a failure of service and that, if that happened, she wanted to hire Daugherty to see if he could have better success. According to Molly, Daugherty told her that he had

no experience in family law but that he did have experience in collecting money judgments and that he would help her in the collection of the alimony arrears.

Eventually the petition for a rule nisi was dismissed. According to Daugherty, Molly informed him that her previous attorney had been charging her $400 per hour and that she could not afford to compensate Daugherty anywhere close to that amount. Therefore, Daugherty told Molly that he was willing to take the case on a contingency-fee basis. Daugherty asserted that Molly "loved the idea of not being required to make any payments regarding the Petition for Rule Nisi until Daugherty collected from [Christopher]."

On August 12, 2019, Daugherty and Molly executed an attorney-client contract ("the contract") that was drafted by Daugherty. In pertinent part, the contract provided:

> "[Molly] does hereby employ [Daugherty] as [Molly's] attorney, and further does hereby contract for legal services to be provided for [Molly] in the representation of [Molly] in regard to: collect on Chris Baker's default with regard to his divorce agreement with [Molly].
>
> "The fee for such services shall be a contingency of: 1/4 of any and all recovery of amounts Chris Baker agreed to give Molly with regard to divorce settlement of Jefferson County

divorce case #: DR-2014-900024 after all expenses have been reimbursed.

"If applicable, court costs, deposition costs, duplicating costs, filing fees, accountant's fees, appraiser's fees, consultant's fees, investigator's fees, title insurance, land surveyors and other professional fees incurred on [Molly's] behalf, and other disbursements will be paid directly by [Molly], or when advanced by [Daugherty], will be borne by and paid for by [Molly].

"....

"ARBITRATION: Any disagreement, difference or controversy between [Molly] and [Daugherty] involving [Daugherty's] representation of [Molly's] case may be submitted to arbitration at the discretion of [Daugherty]. The arbitration shall comply and be governed by the provisions of the State of Alabama and all applicable Federal law. The arbitration shall be arbitrated by an arbitrator panel composed of three arbitrators.

"....

"This Agreement embodies the entire Agreement of the parties hereto with respect to the matters herein contained, and it is agreed that the terms, conditions, and stipulations hereof shall not be modified or revoked unless by written agreement signed by both parties and attached hereto and made a part hereof.

"....

"[Molly] agrees to pay a reasonable attorney fee and the costs of collection in the event this debt has to be collected due to the default of [Molly] as a result of [her] failure to pay any monies due under this contract."

On September 12, 2019, Daugherty filed on Molly's behalf a "Petition for Rule Nisi" against Christopher in the domestic-relations case. On May 12, 2020, Daugherty filed on Molly's behalf a summary-judgment motion in that case. On June 29, 2020, the domestic-relations court denied that motion. On July 3, 2020, Daugherty filed on Molly's behalf a "First Amendment to Petition for Rule Nisi" against Christopher. According to Daugherty, he paid all the expenses with regard to those filings. Daugherty also asserted that he "obtained all the needed discovery in order to present the case, pre-marked all exhibits for trial and submitted those eleven (11) exhibits to the [domestic-relations] court and to [Christopher's] attorney, Marcus Jones."

On September 24, 2020, Christopher filed a separate petition to modify his monthly alimony payments. On May 11, 2021, the two matters -- Molly's petition for a rule nisi and Christopher's petition to modify his monthly alimony -- were consolidated into a single action, and they were set for a trial to be held on August 17, 2021. According to Daugherty, on April 13, 2021, he filed a motion to continue the trial

> "in order to give Molly additional time to find another attorney to help her to defend only against [Christopher's] 9/24/2020 Petition to Modify Alimony … since I only was willing to represent Molly on her Complaint for Rule Nisi to

5

collect deficiencies regarding [Christopher's] failure to pay all that was due …, and the Court granted the said motion to continue."

On June 29, 2021, Molly filed a motion to have separate trials for the two petitions. The domestic-relations court denied the motion on the same day. On July 10, 2021, Molly filed a second motion for separate trials. On July 14, 2021, the domestic-relations court denied the second motion for separate trials. Daugherty then agreed to represent Molly with respect to both petitions. As he stated in response to a request for admissions from Molly, he

> "reluctantly agreed to represent Molly with regard to the counterclaim to Petition to Modify Alimony and even went so far as to recommend that we file a Petition to Modify Child Support in the event Molly sincerely could not arrange for another attorney to represent her with any other aspects of her case other than the subject matter of the Rule Nisi I filed in which we each agreed as set out in our 8/12/2019 Attorney/Client contract."

Daugherty also admitted in another filing that he "agreed to represent [Molly] on all the matters with no change in the said Attorney Fees Contract between Daugherty and [Molly]."

On August 9, 2021, Molly emailed Daugherty and demanded that he withdraw from representing her. Daugherty emailed a response in

which he stated that he was willing to represent Molly with respect to both petitions but that,

> "[a]lternatively, I am willing to file the Motion to Withdraw as to representing you, but I will need a little time to compute the fees I am due. I am not willing to give you any of the documents I have in my possession until you pay me my entire attorney fees which I will need a little time to compute. As you can see by my attachment that the Alabama Rules of Professional Conduct authorize[] me to retain your papers until my fees are paid. If this is the route you want to take, then I'll file a Motion to Intervene in your case against [Christopher] so I can enforce the collection of my attorney fees."

On August 11, 2021, Daugherty filed a motion to withdraw from representing Molly in the domestic-relations case. On August 16, 2021, the motion to withdraw was granted. Also on August 16, 2021, Molly and Christopher filed a joint motion to dismiss the domestic-relations case. On August 17, 2021, the domestic-relations court entered an order granting Christopher and Molly's joint motion to dismiss, specifically dismissing both Molly's petition for a rule nisi and Christopher's petition to modify his alimony payments.

On August 17, 2021, Daugherty filed a motion to intervene in the domestic-relations case in order to protect his interest in the attorney fees he believed that he was owed by Molly, and he filed a petition to

7

claim and secure attorney fees based on the contract. On the same date, the domestic-relations court denied Daugherty's motion to intervene.

On September 9, 2021, Daugherty filed a "Motion to Stay Proceedings and Motion to Refer Dispute to Arbitration" in which Daugherty attempted to invoke the arbitration provision in the contract for determining the issue of "what amount of attorney fees should be awarded to Daugherty as a result of [Molly's] having instructed Daugherty that she no longer is willing for Daugherty to represent her in regard to" the domestic-relations case. On September 10, 2021, the domestic-relations court dismissed Daugherty's motion seeking to invoke arbitration because "[t]his case was dismissed by agreement of [Molly] and [Christopher]. Therefore, there is no longer a case pending and[,] thus, there is no case in which to intervene by the former attorney for [Molly], let alone one in which this Court could compel arbitration on a contract issue."

On March 16, 2022, Daugherty commenced the present action by filing a pro se complaint in the Jefferson Circuit Court alleging that Molly had breached the contract; Daugherty sought to have the contract "enforced as written." Daugherty asserted that he was entitled to, "at a

8

minimum, … one fourth (1/4) of the sum of the accumulated alimony deficiency of $4,000.00/month from April 2016 until August 2021 plus judicial interest, (2) a reasonable attorney fee[,] and (3) the total expenses Daugherty has paid for this case." Daugherty attached as exhibits to his complaint copies of: (1) the contract; (2) the "Final Judgment of Divorce" entered by the domestic-relations court on August 19, 2014; (3) the July 31, 2014, "Agreement of the Parties" between Christopher and Molly; and (4) the August 9, 2021, email in which Molly demanded that Daugherty withdraw as her counsel in the domestic-relations case.

On May 11, 2022, Molly filed a motion to dismiss Daugherty's complaint, arguing that Daugherty's action was barred by the doctrine of res judicata because Daugherty had previously sought to enforce the contract in the domestic-relations case, but the domestic-relations court had "denied [Daugherty's] petition for fees." On the same date, Molly filed an "Answer and Counterclaim" in response to Daugherty's complaint. Molly's counterclaim asserted five counts against Daugherty: four counts of "Legal Malpractice" pursuant to the Alabama Litigation Accountability Act ("the ALAA"), Ala. Code 1975, § 12-19-270 et seq., and one count seeking a judgment declaring that the contract was void

9

because it contained "an ethically prohibited arbitration term" and because it allowed a contingency fee in a domestic-relations matter, which, she contended, violated Rule 1.5 of the Alabama Rules of Professional Conduct. Molly attached as exhibits to her answer and counterclaim copies of: (1) email correspondence between Daugherty and Molly concerning her decision to terminate the attorney-client relationship and (2) the Formal Opinion of the General Counsel of the Alabama State Bar, RO-02-04, that addressed the appropriateness of an arbitration provision in an attorney-client contract. Molly sought an unspecified amount of compensatory and punitive damages in her counterclaim.

On May 17, 2022, Daugherty filed a response in opposition to Molly's motion to dismiss his complaint. In his response, Daugherty noted that the domestic-relations court had stated in its September 10, 2021, order that "this is not the proper Court to seek the contractual relief that the former attorney for [Molly] is seeking." Thus, Daugherty argued, the domestic-relations court had not substantively decided that Daugherty could not seek compensation for legal fees allegedly due under the contract, and so, he said, the doctrine of res judicata did not apply.

10

Daugherty attached as an exhibit to his response a copy of the domestic-relations court's September 10, 2021, order dismissing Daugherty's motion to invoke arbitration.

On October 3, 2022, the circuit court entered an order setting Molly's motion to dismiss for a hearing on October 25, 2022. On October 20, 2022, Molly filed a reply to Daugherty's response to her motion to dismiss in which she again asserted that Daugherty's complaint should be precluded by the doctrine of res judicata. Molly attached as exhibits to her reply copies of: (1) the domestic-relations court's August 17, 2021, order dismissing Molly's petition for a rule nisi and Christopher's petition to modify his alimony payments; (2) Daugherty's motion to intervene in the domestic-relations case; (3) Daugherty's petition to claim and secure attorney fees based on the contract; (4) the domestic-relations court's August 17, 2021, order denying Daugherty's motion to intervene; (5) Daugherty's motion to stay and to refer the dispute to arbitration; and (6) the domestic-relations court's September 10, 2021, order dismissing Daugherty's motion to invoke arbitration.

On October 21, 2022, Daugherty filed a summary-judgment motion in which he contended that he was entitled to a judgment as a matter of

11

law based on the contract. In that motion, Daugherty provided a breakdown of the amount he believed he was due under the contract based on the premise that he would have sought $455,009.08 from Christopher under the petition for a rule nisi, that Daugherty paid $727.83 in expenses during his work for Molly in seeking a rule nisi, and that one-fourth of the amount sought plus expenses was $114,480.10. In support of his summary-judgment motion, Daugherty attached as exhibits: (1) an affidavit from himself; (2) a copy of the July 31, 2014, "Agreement of the Parties" between Christopher and Molly; (3) the August 19, 2014, "Final Judgment of Divorce" between Christopher and Molly; (4) a copy of the contract between himself and Molly; and (5) a copy of the "Trial Brief" Daugherty had prepared to be filed in the domestic-relations case on Molly's behalf but that was not filed because the case had been dismissed by the agreement of Christopher and Molly.

On October 28, 2022, Daugherty filed a "Memorandum" in which he stated that he sought to provide the circuit court with "some law which applies to the case." Daugherty argued that contingency fees are protected under the law even when an attorney is not retained through

the conclusion of a case, and he repeated that he believed that he was entitled to $114,480.10 under the contract.

On November 3, 2022, Molly filed a motion to strike Daugherty's "Memorandum," contending that Daugherty's filing was "inappropriate" because the circuit court had instructed the parties "not to file additional briefs" following the October 25, 2022, hearing concerning Molly's motion to dismiss. On July 10, 2023, Molly filed a "Motion for Ruling on Defendant's Pending Motion to Dismiss" because no ruling had yet been entered by the circuit court concerning Molly's motion to dismiss Daugherty's complaint.

On February 15, 2024, the circuit court entered an order granting Molly's motion to dismiss. In that order, the circuit court specifically noted it was "tak[ing] judicial notice of the herein court file and a corresponding court file representing a Domestic Relations Case, DR-2014-900024, … Molly Chew Baker v. Christopher Alan Baker." The circuit court first rejected Molly's contention that Daugherty's claims were barred by the doctrine of res judicata because, it reasoned, "[t]he prior judgment was not rendered on the merits, but was dismissed per joint agreement by the parties, therein." However, the circuit court then

highlighted Rule 1.5(d)(1) of the Alabama Rules of Professional Conduct, which provides:

> "(d) A lawyer shall not enter into an arrangement for, charge, or collect:
>
> "(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof …."

The circuit court concluded:

> "The Court <u>FINDS</u> that [Daugherty's] Complaint, in seeking a <u>1/4 contingency amount of the sum of the accumulated alimony deficiency</u> due to [Molly], which is designed to help the receiving spouse through rehabilitative measures to become financially independent and to support that party's reasonable needs, <u>plus the judicial interest</u>, is contrary to the Alabama Rules of Professional Conduct -- and the Client-Lawyer Relationship, is unconscionable and is against public policy."

(Emphasis and capitalization in original.) Thus, the circuit court granted Molly's motion to dismiss Daugherty's complaint because it determined that the contract was against public policy under Rule 1.5(d), Ala. R. Prof. Cond. On the same date, February 15, 2024, the circuit court entered a separate order dismissing as moot Daugherty's summary-judgment motion and Molly's motion to strike Daugherty's post-hearing memorandum.

On February 16, 2024, Molly filed a motion seeking to set a trial date "for a bench trial on [Molly's] counterclaims against [Daugherty]."

On February 23, 2024, Daugherty filed a postjudgment motion to alter, amend, or vacate the circuit court's February 15, 2024, order. In that motion, Daugherty contended that the contingency fee contained in the contract fit within an exception to the prohibition on contingency-fee agreements by attorneys in domestic-relations cases. In support of that contention, Daugherty cited to and attached to his motion copies of two formal opinions from the General Counsel of the Alabama State Bar. Specifically, Daugherty argued that an exception applied in domestic-relations cases seeking the collection of child support or alimony after a completed divorce. Additionally, Daugherty presented a new argument contending that, even if the contract was void for being against public policy due to the contingency-fee arrangement, he was still entitled to compensation based on the theory of quantum meruit because of the services he had rendered to Molly. Daugherty asserted that if the contract fits within the exception to the prohibition on contingency fees in the Alabama Rules of Professional Conduct, he was entitled to $113,752.27 for services rendered in the domestic-relations case, plus

15

$23,265.04 based on quantum meruit for the expenses he had allegedly incurred in prosecuting the present action. Thus, Daugherty claimed that the total amount owed to him by Molly was $137,017.31. Daugherty asserted that if the circuit court affirmed its conclusion that the contract's contingency-fee arrangement was contrary to public policy, then, under the theory of quantum meruit, he was entitled to $70,930 for services rendered in the domestic-relations case and $23,265.04 for the expenses he had allegedly incurred in prosecuting the present action. Thus, Daugherty claimed that the total amount owed to him by Molly under quantum meruit was $94,195.04.

On February 26, 2024, the circuit court entered an order denying Daugherty's postjudgment motion without providing further explanation for its decision.

On March 1, 2024, Daugherty filed a notice of appeal in the circuit court. (See Rec. vol. II, C. 366-70.) On March 3, 2024, Molly filed in the circuit court a motion to strike Daugherty's notice of appeal on the ground that the circuit court's February 15, 2024, order granting her motion to dismiss Daugherty's complaint was not a final judgment because her counterclaims remained pending in the circuit court. On March 5, 2024,

the circuit court entered an order denying Molly's motion to strike Daugherty's notice of appeal. In that order, the circuit court reiterated that it had concluded in its February 15, 2024, order that the contingency-fee arrangement in the contract was "contrary to the Alabama Rules of Professional Conduct -- and the Client-Lawyer Relationship, [and] is unconscionable and is against public policy." The circuit court then concluded: "The Court FINDS that the Court's Order Granting [Molly's] Motion to Dismiss is this Court's FINAL JUDGMENT on [Daugherty's] Claim for Breach of Contract against [Molly]. Accordingly, [Molly's] Motion to Strike [Daugherty's] Notice of Appeal is DENIED." (Emphasis and capitalization in original.) On March 7, 2024, Daugherty's notice of appeal was filed in this Court.

## II. Standard of Review

The circuit court clearly considered materials outside the pleadings; the circuit court even stated in its order granting Molly's motion to dismiss that it had taken judicial notice of the court file in the domestic-relations case.[1] However, that fact does not require converting the motion

---

[1]Although ordinarily "'[c]ircuit courts do not take judicial notice of the records of another court,'" neither party objected to the circuit court's taking judicial notice of filings in the domestic-relations case; indeed,

17

to dismiss to a motion for summary judgment because "[a] trial court does not treat a Rule 12(b)(6)[, Ala. R. Civ. P.,] motion as a summary-judgment motion by considering authenticated documents that are attached to the motion to dismiss if '"'the document[s are] referred to in the complaint and [are] central to the plaintiff[s'] claim[s].'"'" Newson v. Protective Indus. Ins. Co. of Alabama, 890 So. 2d 81, 86 (Ala. 2003) (quoting Donoghue v. American Nat'l Ins. Co., 838 So. 2d 1032, 1035 (Ala. 2002), quoting in turn Wilson v. First Union Nat'l Bank of Georgia, 716 So. 2d 722, 726 (Ala. Civ. App. 1998), quoting in turn GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)). The contract, which was attached to Daugherty's complaint, was the basis of Daugherty's breach-of-contract claim. Moreover, filings in the domestic-relations case, which were attached to Daugherty's response to the motion to dismiss and to Molly's reply thereto, were central to Molly's arguments for dismissal, which were provided in both her motion and in her counterclaim.

---

both parties attached the relevant filings from that case as exhibits to their filings in the present case. Municipal Workers Comp. Fund, Inc. v. Morgan Keegan & Co., 190 So. 3d 895, 911 (Ala. 2015) (quoting Charles W. Gamble & Robert J. Goodwin, McElroy's Alabama Evidence § 484.02(2) (6th ed. 2010)).

"'"The standard of review of the grant of a motion to dismiss ... was set out in Nance v. Matthews, 622 So. 2d 297, 299 (Ala. 1993):

> "'"'On appeal, a dismissal is not entitled to a presumption of correctness. The appropriate standard of review ... is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note that a ... dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'"'"

Waterworks & Sewer Bd. of Selma v. Allen, 3 So. 3d 846, 848 (Ala. 2008) (quoting Helms v. Barbour Cnty., 914 So. 2d 825, 828 (Ala. 2005), quoting in turn Jacks v. Madison Cnty., 741 So. 2d 429, 430 (Ala. Civ. App. 1999)).

## III. Analysis

### A. Jurisdiction of the Appeal

Before we evaluate the merits of Daugherty's appeal, it must be determined whether we have jurisdiction over his appeal because "jurisdictional matters are of such magnitude that we take notice of them

19

at any time and do so even <u>ex mero motu</u>." <u>Nunn v. Baker</u>, 518 So. 2d 711, 712 (Ala. 1987).

In his brief's "Statement of Jurisdiction," Daugherty asserts that this Court has jurisdiction of his appeal because the circuit court's February 15, 2024, order "constituted a final judgment against all claims and against all parties." Daugherty's brief, p. 1. In her brief's "Statement of Jurisdiction," Molly proclaims that she "adopts [Daugherty's] statement of jurisdiction to the extent this Honorable Court finds the trial court's order final under Rule 54(b), Ala. R. Civ. P.,[2] as [Molly's] counterclaim for legal malpractice remains pending." Molly's brief, p. 1.

Molly's observation highlights the potential problem: What is the status of Molly's counterclaims? We first observe that the sequence of events that followed the filing of Daugherty's notice of appeal on March 1, 2024 -- the filing of Molly's motion to strike Daugherty's notice of

_____

[2]Rule 54(b), Ala. R. Civ. P., provides, in pertinent part:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

appeal and the circuit court's entry of the March 5, 2024, order denying Molly's motion to strike, concluding that its February 15, 2024, order was a "final judgment on [Daugherty's] claim for breach of contract against Molly" -- is immaterial to answering that question. (Emphasis and capitalization omitted.) That is because "[t]he timely filing of a notice of appeal invokes the jurisdiction of an appellate court and divests the trial court of jurisdiction to act except in matters entirely collateral to the appeal." Harden v. Laney, 118 So. 3d 186, 187 (Ala. 2013). The subject of Molly's motion to strike and the circuit court's March 5, 2024, order -- whether the circuit court's February 15, 2024, order was a final judgment -- was not a matter collateral to the appeal, and, thus, the circuit court lacked jurisdiction to entertain and to rule on Molly's motion to strike because the circuit court was divested of jurisdiction in the case on March 1, 2024, when Daugherty filed his notice of appeal.

Of course, we have authority to maintain jurisdiction of Daugherty's appeal if the appeal stemmed from a final judgment or from a judgment properly certified as final for purposes of appeal under Rule 54(b), Ala. R. Civ. P. See, e.g., Bean v. Craig, 557 So. 2d 1249, 1253 (Ala. 1990) (noting that "[a]n appeal ordinarily will lie only from a final

21

judgment -- i.e., one that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved"); First Commercial Bank of Huntsville v. Nowlin, 122 So. 3d 829, 831 (Ala. 2013) (observing that "Rule 54(b), Ala. R. Civ. P., establishes an exception to the general rule").

The circuit court's February 15, 2024, order was not a Rule 54(b) order. It did not cite Rule 54(b), and it did not "use the 'no just reason for delay' language from that rule this Court has previously recognized as sufficient to indicate an intent to certify an order as a final order under Rule 54(b)." Elkins v. Carroll, 220 So. 3d 290, 297 (Ala. 2016). See also Grimmer v. Williams, 389 So. 3d 1154, 1157-58 (Ala. 2023) (observing that "to properly certify an order as final under Rule 54(b), a trial court must determine (1) that the action involves more than one claim, (2) that the order completely adjudicates at least one claim, and (3) that 'no just reason for delay' exists").

However, the circuit court's February 15, 2024, order also did not address Molly's counterclaims against Daugherty in any way. "'A ruling that disposes of fewer than all claims or relates to fewer than all parties in an action is generally not final as to any of the parties or any of the

22

claims.'" Elkins, 220 So. 3d at 296 (quoting Wilson v. Wilson, 736 So. 2d 633, 634 (Ala. Civ. App. 1999)). Thus, ordinarily we would not consider the circuit court's February 15, 2024, order to be a final judgment.

However, this is not an ordinary circumstance because of the nature of Molly's counterclaims. As we recounted in the rendition of the facts, Molly's counterclaim asserted five counts against Daugherty. The first of those counts sought a judgment declaring that the contract was void -- in part on the basis that the contract inappropriately contained a contingency-fee arrangement in a domestic-relations matter. The circuit court effectively granted that portion of Molly's counterclaim in its February 15, 2024, order by concluding that the contract was unconscionable and against public policy because of the contingency-fee arrangement that concerned the recovery of alimony payments.[3] The other four counts in Molly's counterclaim asserted claims under the ALAA. The Court of Civil Appeals addressed a similar situation in Keller Construction Co. of Northwest Florida, Inc. v. Hartford Fire Insurance

---

[3]Indeed, Molly's counterclaim was her only filing in the circuit court that posited that the contract was void because it contained a contingency-fee arrangement in a domestic-relations matter. Molly's motion to dismiss focused solely on the doctrine of res judicata.

<u>Co.</u>, 279 So. 3d 579 (Ala. Civ. App. 2018). It noted that, "[o]rdinarily, the failure to adjudicate a pending claim would render a judgment nonfinal and, therefore, nonappealable." <u>Id.</u> at 583. But the Court of Civil Appeals determined that the counterclaim at issue "was, in essence, a claim under the ALAA." <u>Id.</u> It then observed:

> "'[W]hen a trial court enters an otherwise final judgment on the merits of a case but fails to address a pending ALAA claim or to reserve jurisdiction to later consider that claim, the ALAA claim is implicitly denied by the judgment on the merits.' <u>Klinger v. Ros</u>, 33 So. 3d 1258, 1260 (Ala. Civ. App. 2009)."

<u>Id.</u> See, e.g., <u>Gonzalez, LLC v. DiVincenti</u>, 844 So. 2d 1196, 1201-02 (Ala. 2002) ("'As interpreted by the supreme court, the ALAA … provides for the trial court to consider the outcome of the proceedings in determining whether a party's action was without substantial justification. For this reason, it is within the court's discretion to hold a separate hearing on an ALAA petition after the entry of final judgment on the merits, provided that the court retained jurisdiction to do so. <u>Meek [v. Diversified Prods. Corp.</u>, 575 So. 2d 1100 (Ala. 1991)]. Otherwise, a final judgment puts an end to all controversies litigated or which ought to have been litigated within the particular controversy. <u>Vacalis v. [Lowry]</u>, 279 Ala. 264, 184

24

So. 2d 345 (1966).'" (quoting <u>Baker v. Williams Bros.</u>, 601 So. 2d 110, 112

(Ala. Civ. App. 1992))). The Court of Civil Appeals has further explained:

> "To prevent the implied denial of an ALAA claim, a party may timely file a postjudgment motion directed to the judgment on the merits seeking the reservation of jurisdiction to hear the ALAA claim; if that motion is granted and the trial court reserves jurisdiction over the ALAA claim pursuant to the amended judgment, the claim survives."

<u>Klinger v. Ros</u>, 33 So. 3d 1258, 1261 (Ala. Civ. App. 2009).

In its February 15, 2024, order, the circuit court did not address Molly's ALAA claims, and Molly did not file a postjudgment motion seeking to have the circuit court reserve jurisdiction to hear her ALAA claims. Therefore, Molly's ALAA claims were implicitly denied by the circuit court. Because of that, the February 15, 2024, order was a final judgment because it disposed of all the claims of all the parties. Accordingly, we have jurisdiction of Daugherty's appeal.[4]

---

[4]The Court of Civil Appeals does not have jurisdiction of this appeal because the amount involved exceeds $50,000 and this is not an appeal from a domestic-relations case. See § 12-3-10, Ala. Code 1975. It is true that Daugherty's claim asserting entitlement to unpaid attorney fees stems from services he rendered in a domestic-relations case, but, as we recounted in the rendition of facts, that case was dismissed, and Daugherty commenced a separate action in his effort to recover what he believes he is owed from Molly. The gravamen of the current action -- the alleged breach of an attorney-client contract -- does not fall within the exclusive jurisdiction of the Court of Civil Appeals.

B. The Merits of Daugherty's Appeal

As we recounted in the rendition of the facts, the circuit court determined that the contract was void as against public policy because it contained a contingency-fee arrangement in a domestic-relations matter. To reach its conclusion, the circuit court relied on Rule 1.5(d)(1), Ala. R. Prof. Cond., which prohibits attorneys from arranging for, charging, or collecting a contingency fee "upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof …."

Daugherty contends that the circuit court erred because "[t]he facts of this case … fit comfortably within the exception to Rule 1.5(d) of the Alabama Rules of Professional Conduct …." Daugherty's brief, p. 15. Daugherty quotes from the "Preamble" of the "Discussion" section of a Formal Ethics Opinion of the General Counsel of the Alabama State Bar, RO-96-01, to support his argument:

> "The Disciplinary Commission of the Alabama State Bar, in formal opinion RO-88-l03, concluded that a lawyer could represent a spouse on a contingent fee basis in an action for breach of an antenuptial contract, said action seeking money damages. The Commission, deciding the matter pursuant to DR 5-103(A) and EC 2-20 of the former Code of Professional Responsibility, acknowledged the pending adoption of Rule 1.5(d), Alabama Rules of Professional Conduct, and its direct prohibition of contingent fees in domestic relations matters. The Commission noted a prior

opinion (RO-83-22) which had listed the only approval of a contingent fee contract in a domestic relations matter, that being collection of child support or alimony arrearage in a completed divorce."

J. Anthony McLain, Opinions of the General Counsel, 57 Ala. Law. 151 (May 1996) (emphasis added).

Based on the emphasized language in the foregoing portion of formal opinion RO-96-01, Daugherty argues that the contingency-fee arrangement in the contract was proper because it concerned the collection of alimony arrearage after a completed divorce, the terms of which were memorialized in the August 19, 2014, divorce settlement agreement between Christopher and Molly. Of course, an opinion of the General Counsel of the Alabama State Bar is not binding on the Alabama courts, and Daugherty does not provide any other Alabama authority in support of his position. Instead, Daugherty cites and quotes from Davis v. Taylor, 81 N.C. App. 42, 344 S.E.2d 19 (1986), but the exceptions Davis discussed are not directly on point with the situation presented here. See Davis, 81 N.C. App. at 47, 344 S.E.2d at 22 (stating that "contingent-fee arrangements generally are permitted in actions by one spouse to recover separate property from another or to settle property rights among them"). Therefore, Daugherty provided insufficient legal authority to warrant a

reversal of the circuit court's judgment. See Rule 28(a)(10), Ala. R. App. P.

But even if Daugherty had provided sufficient legal authority for his position, the exception upon which he relies would not apply in this instance. As Molly observes, Daugherty did not just represent her with respect to her petition for a rule nisi; he also willingly represented Molly with respect to Christopher's petition to modify his monthly alimony payments. Despite that change in the status of his representation, Daugherty did not change the terms of the contract with Molly. Consequently, Daugherty had contracted for a contingency fee not just with respect to the collection of an alimony arrearage, but also with respect to "the amount of alimony" due to Molly on an ongoing basis. Rule 1.5(d)(1), Ala. R. Prof. Cond. In other words, the exception to Rule 1.5(d)(1) upon which Daugherty relies did not apply to his situation.[5]

---

[5]In his reply brief, Daugherty cursorily argues that although he offered to represent Molly with respect to Christopher's petition to modify his alimony payments, Molly "elected to terminate Appellant Attorney Daugherty before Appellant Attorney Daugherty and [Molly] could extend the attorney/client contract to include the additional legal services." Daugherty's reply brief, p. 2. However, as we recounted in the rendition of facts, that argument is directly contrary to the facts in the record. In his responses to requests for admissions, Daugherty openly admitted that he had agreed to represent Molly with regard to all aspects

Therefore, based on the argument Daugherty has presented, the circuit court did not err in concluding that the contingency-fee arrangement in the contract was against public policy.

We take this opportunity to note, however, that Daugherty apparently failed to notice the following admonition this Court provided in <u>Poole v. Prince</u>, 61 So. 3d 258, 280-82 (Ala. 2010):

"The Scope to the Rules of Professional Conduct states, in part:

" '<u>Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule</u>. Accordingly, nothing in the Rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty.'

of the domestic-relations case and that he had done so without modifying the terms of his representation.

"… The power to declare a contract void based on a violation of public policy '"is a very delicate and undefined power and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt."' <u>Milton Constr. Co. v. State Highway Dep't</u>, 568 So. 2d 784, 788 (Ala. 1990) (quoting 17 Am Jur.2d <u>Contracts</u> § 178 (1964)). '"The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain.... [T]he courts will not declare an agreement void on the ground of public policy unless it clearly appears to be in violation of the public policy of the state."' <u>Id.</u> (emphasis omitted).

"....

"<u>We conclude that the trial court erred to the extent that it determined the parties' agreement to be unenforceable as violative of Rule 1.5(e), Ala. R. Prof. Cond.</u>[6] <u>As discussed in the Scope of the Alabama Rules of Professional Conduct and in the above-cited authorities, the sole remedy for a violation of Rule 1.5(e) is disciplinary in nature; therefore, the trial court lacked the authority to declare the parties' agreement unenforceable as violative of Rule 1.5(e)</u>."

(Some emphasis in original; some emphasis added.)

Although the facts in <u>Poole</u> involved the application of Rule 1.5(e), rather than Rule 1.5(d), its rationale dictates that a court should not declare void an agreement between parties based on the violation of a Rule of Professional Conduct because those rules are intended for the discipline of attorneys, not for civil liability or defense. But, as we have

---

[6]Rule 1.5(e), Ala. R. Prof. Cond., addresses the division of a fee between lawyers who are not in the same law firm.

noted, Daugherty did not cite <u>Poole</u> or the principles it contains in the circuit court or in his appellate briefs. "It is well settled that an appellate court may not hold a trial court in error in regard to theories or issues not presented to that court." <u>Allsopp v. Bolding</u>, 86 So. 3d 952, 962 (Ala. 2011). Accordingly, we will not reverse the circuit court's judgment based on the principles enunciated in <u>Poole</u>. We simply reiterate them to remind courts to be careful how they employ the Alabama Rules of Professional Conduct.

Even if Daugherty had correctly refuted the circuit court's basis for the dismissal of his breach-of-contract claim, his claim had another inherent weakness. "[O]ur caselaw provides that where the written attorney-fee agreement contemplates compensation for the attorney <u>in the event of a settlement of the litigation involving his clients</u>, the terms of that attorney-fee agreement control to determine the amount of the attorney's lien available under § 34-3-61, Ala. Code 1975."[7] <u>Harlow v.</u>

---

[7]Section 34-3-61, Ala. Code 1975, is the attorney lien-statute. This Court has stated that "the purpose of the attorney's lien statute, § 34-3-61, Code of Ala. 1975, is to protect the attorney from loss of his investment in time, effort, and learning, and the loss of funds used in serving the interest of the client." <u>Triplett v. Elliott</u>, 590 So. 2d 908, 910 (Ala. 1991). It is apparent from Daugherty's filings below that his breach-of-contract claim was based on § 34-3-61.

Sloss Indus. Corp., 813 So. 2d 879, 889 (Ala. Civ. App. 2001) (emphasis added). The contract did not contain a provision stating that Daugherty was entitled to compensation in the event Molly and Christopher reached a settlement of their differences. The contract specifically provided: "The fee for such services shall be a contingency of: 1/4 of any and all recovery of amounts Chris Baker agreed to give Molly with regard to divorce settlement of Jefferson County divorce case #: DR-2014-900024 after all expenses have been reimbursed." (Emphasis added.) Molly did not recover any amount from Christopher in the domestic-relations case. The only provision of the contract that could be said to support a recovery is the second to last paragraph of the contract, which stated: "[Molly] agrees to pay a reasonable attorney fee and the costs of collection in the event this debt has to be collected due to the default of [Molly] as a result of [her] failure to pay any monies due under this contract." (Emphasis added.) But because there was no "recovery of amounts Chris Baker agreed to give Molly with regard to" the August 19, 2014, divorce judgment, the only money that could be said to be "due under this contract" would be legal expenses. That is because of another contract provision that stated that "court costs, … duplicating costs, filing fees,

32

[and] investigator's fees … incurred on [Molly's] behalf, … when advanced by [Daugherty], will be borne by and paid for by [Molly]," and Daugherty alleged in his complaint that Molly "ha[d] contributed no money to pay any expenses regarding the filing of [the petition for a rule nisi in the domestic-relations case], obtaining service on [Christopher] or any other expense which has come due with regard to that case." In his postjudgment motion, Daugherty estimated that his litigation expenses totaled $727.83, a far cry from the $113,752.27 in total damages Daugherty sought for his breach-of-contract claim in the same motion.

Daugherty argues that even if the contract "is not enforceable on a contingency basis, Attorney Daugherty should be entitled to his legal fees based on quantum meruit." Daugherty's brief, p. 16. Daugherty cites and quotes several legal authorities for the proposition that an attorney whose services are terminated before the conclusion of litigation and who was due to be compensated on a contingency-fee basis is entitled to payment for services rendered. For example, in Triplett v. Elliott, 590 So. 2d 908, 910 (Ala. 1991), this Court stated:

> "It is well established in Alabama that upon an attorney's discharge, the prior part performance of a contract entitles the attorney to recover for those services rendered. As the Court of Civil Appeals pointed out in Gaines[, Gaines &

33

Gaines, P.C. v. Hare, Wynn, Newell & Newton, 554 So. 2d 445 (Ala. Civ. App. 1989)]:

"'"The rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated only for services rendered before such discharge. Hall v. Gunter, 157 Ala. 375, 47 So. 155 [(1908)]. This appears to be the prevailing rule where the contract, as here, called for a contingent fee. 6 C.J. p. 724, § 293." Owens v. Bolt, 218 Ala. 344, 348, 118 So. 590 (1928).'

"554 So. 2d at 448."

There are at least three problems with Daugherty's quantum meruit argument. First and foremost, as Molly observes, Daugherty never pleaded quantum meruit as an alternative basis for the recovery of attorney fees: Daugherty's complaint solely asserted a claim of breach of contract based on the terms of the contract. Daugherty first asserted a right to recovery based on quantum meruit in his postjudgment motion. But Daugherty cannot have it both ways: either Daugherty's postjudgment motion was, in substance, a motion to amend his complaint, following the circuit court's dismissal of his original complaint, or Daugherty's postjudgment motion was, as it was labeled, a postjudgment motion seeking reconsideration of the basis on which his breach-of-contract claim was dismissed. See, e.g., Morris v. Merchants

34

Nat'l Bank of Mobile, 359 So. 2d 371, 373 (Ala. 1978) (concluding that a postjudgment motion following the entry of a summary judgment was, in substance, a motion to amend the complaint rather than a motion to seeking to have the trial court reexamine the evidence). Viewed as a whole, Daugherty's postjudgment motion was clearly asking the circuit court to reexamine its basis for dismissal by citing to an exception to the Alabama Rules of Professional Conduct's general prohibition on contingency-fee arrangements by attorneys in domestic-relations cases. In other words, Daugherty was not seeking permission from the circuit court to amend his complaint, and the circuit court cannot be faulted for not viewing his postjudgment motion as seeking such permission when it denied Daugherty's motion. Because Daugherty never properly amended his complaint to include a claim for recovery based on quantum meruit, we will not reverse the circuit court's judgment on that basis.

Second, Daugherty's new claim for recovery under the theory of quantum meruit contradicts his argument that he has an attorney lien based on the contract.

> "Pursuant to § 34-3-61, Ala. Code 1975, and its predecessors, an attorney may establish his right to an attorney-fee lien either through contract or on the theory of quantum meruit. Carnes v. Shores, 55 Ala. App. 608, 318 So.

35

2d 305 (Ala. Civ. App. 1975). <u>See</u> <u>also</u> <u>Triplett v. Elliott</u>, [590 So. 2d 908 (Ala. 1991)]; <u>Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton</u>, 554 So. 2d 445 (Ala. Civ. App. 1989). Harlow has claimed an attorney-fee lien pursuant to his contract with the clients; therefore, he has not argued the theory of quantum meruit before the trial court or before this court. <u>An express contract between the parties generally precludes the existence of an implied agreement relative to the same subject matter</u>. <u>Betts v. McDonald's Corp.</u>, 567 So. 2d 1252 (Ala. 1990)."

<u>Harlow</u>, 813 So. 2d at 887 (emphasis added). The foregoing rule perhaps explains why Daugherty did not initially plead quantum meruit as a basis for recovery.

Third, Daugherty's claim for recovery based on quantum meruit ignores the limitations on such a claim. "'The rule in Alabama is that an attorney discharged without cause, or otherwise prevented from full performance, is entitled to be reasonably compensated <u>only for services rendered before such discharge</u>.'" <u>Gaines, Gaines & Gaines, P.C. v. Hare, Wynn, Newell & Newton</u>, 554 So. 2d 445, 448 (Ala. Civ. App. 1989) (quoting <u>Owens v. Bolt</u>, 218 Ala. 344, 348, 118 So. 590, 594 (1928)) (emphasis added). Daugherty's calculations of damages are based on what he claimed was "a minimum [Molly] would be entitled to [in] a judgment if tried as set out and described in detail on the 'Trial Brief' Daugherty prepared to argue and submit on 8/17/2021." Daugherty's

36

brief, p. 12. In other words, Daugherty sought damages based on what Molly <u>might</u> have recovered from Christopher <u>if</u> the petition for a rule nisi had gone to trial -- something that never occurred because Molly and Christopher moved for and received a joint dismissal of their respective petitions. Thus, Daugherty's new quantum meruit claim -- and his original breach-of-contract claim for that matter -- did not solely seek compensation for services rendered before discharge but, rather, sought damages for what might have been recovered in the event of successful litigation at trial. Consequently, even if Daugherty had properly pleaded his quantum meruit claim, and even if it could have been permitted in the alternative to his breach-of-contract claim, the claim would have been much more limited than what was claimed in his postjudgment motion.

## IV. Conclusion

The circuit court dismissed Daugherty's breach-of-contract claim against Molly on the basis that the contract was void for public policy because the contract contained a contingency-fee arrangement in a prohibited domestic-relations context. Daugherty did not present to the circuit court or to this Court sufficient Alabama authority that refuted the application of that prohibition, particularly given that the exception

37

to the contingency-fee prohibition upon which Daugherty relied did not apply to his situation once he had agreed to represent Molly with respect to Christopher's petition to modify his alimony payments. Daugherty never pleaded his alternative quantum meruit claim, and thus that is not a proper legal basis for reversing the circuit court's judgment. Accordingly, the circuit court's judgment is due to be affirmed.

AFFIRMED.

Parker, C.J., and Wise, Bryan, Sellers, Stewart, and Cook, JJ., concur.

Mitchell, J., concurs in part and concurs in the result, with opinion.

Shaw, J., concurs in the result.

MITCHELL, Justice (concurring in part and concurring in the result).

The Jefferson Circuit Court held that attorney John A. Daugherty's contract with Molly Chew Baker "was void as against public policy because it contained a contingency-fee arrangement in a domestic-relations matter." ___ So. 3d at ___. While there is some authority indicating that "a court should not declare void an agreement between parties based on the violation of a Rule of Professional Conduct," ___ So. 3d at ___ (citing <u>Poole v. Prince</u>, 61 So. 3d 258, 280-82 (Ala. 2010), Daugherty failed to cite that authority to the trial court. And because it is the appellant's duty to show that the trial court erred, <u>see</u> <u>Arthur v. Bolen</u>, 41 So. 3d 745, 750 (Ala. 2010), and because we will not "hold a trial court in error in regard to theories or issues not presented to [it]," <u>Allsopp v. Bolding</u>, 86 So. 3d 952, 962 (Ala. 2011), Daugherty has failed to meet his burden of demonstrating error below. Accordingly, we must affirm the trial court's judgment.

I concur in the result only as to the other matters discussed in the majority opinion -- specifically, whether the Rules permit Daugherty's contingency-fee arrangement, what he would be owed under that

39

arrangement, or the merits of his forfeited quantum meruit claim -- because those matters are not necessary to decide this appeal.